Morris Eder, J.
Respondent moves to confirm the Referee’s report recommending that petitioner’s motions to vacate the arbitration awards be denied. The Referee conducted extensive hearings on the facts of the basic transaction as well as the conduct of the arbitration proceedings and concluded that petitioner had failed to sustain any of the grounds asserted for vacatur of the awards.
We need not dwell upon the claim of misconduct, as the evidence fully supports the finding that it was not substantiated and that petitioner’s rights were not prejudiced by any of the acts or procedure adopted by the arbitrators.
Two substantial questions are presented: (1) whether petitioner is entitled at this time to put in issue the making of the contract providing for arbitration, e.g., obtain a trial of that issue (Civ. Prac. Act, §§ 1458, 1462, subd. 5) and (2) whether the arbitrators exceeded their powers so that a “ mutual, final and definite award upon the subject-matter submitted was not made ”. (Civ. Prac. Act, § 1462, subd. 4.)
With regard to the first question: It appears that on July 14, 1949, a broker acting on behalf of petitioner signed a written contract which was accepted under the signature of respondent providing for the sale “ for account of ” petitioner to respondent of 15 tons of pepper at a stipulated price shipped “ from the East during December 1949 to New York ”. This contract for a transaction in “ futures ” involving pepper was on the standard form of the American Spice Trade Association and provided that “ all questions and controversies, and all claims arising under this Contract shall be submitted to and settled by Arbitration” under the rules of the association. When petitioner subsequently repudiated this contract, claiming that the matter had not passed “ beyond the discussion stage”, respondent demanded arbitration. Petitioner claimed that there *89 was no agreement between him and respondent and hence no duty to arbitrate. He, therefore, declined to name an arbitrator. In accordance with the rules of the Association, an arbitrator was designated in his behalf. Petitioner thereafter asserted lack of jurisdiction on the part of the arbitrators but did contest the merits of the controversy not only in the original hearing before the arbitrators but also in prosecuting an appeal within the framework of the association’s rules on jurisdictional and factual grounds. Without going into the specific details set forth in the Referee’s report, it is clear that petitioner’s “ participation ” in the arbitration proceedings in the full sense in which that term is used in section 1458 of the Civil Practice Act, was properly found by him to have been proved.
Petitioner urges, however, that his right to claim before the court on this application that there was no valid agreement to arbitrate survived his participation in the arbitration after duly registering his protest that no arbitration could properly be held, citing Finsilver, Still & Moss v. Goldberg, Maas & Co. (253 N. Y. 382, 391, Ann. 69 A.L.R. 809). That decision, however, is merely authority for the proposition that under existing law” (Arbitration Law, § 4-a; L. 1927, ch. 352) “where there is seasonable protest or disclaimer in response to a claim of jurisdiction, the protest or disclaimer is not nullified by proceeding thereafter to a hearing on the merits. ’ ’ Judge Cabdozo went on to say: ‘ ‘ Certain it is that in the terms of the statute there is no express denial of the right to join in the proceeding under protest and then contest the jurisdiction. If denial was intended, it has been left to doubtful implication. The implication should be clear before a right so fundamental will be held to have been lost.” He then referred to the two courses of action then open to the adversary who disputed the existence of an agreement to arbitrate: ‘ ‘ The party who contests the jurisdiction may keep out. If he chooses to go in, the Legislature may say to what extent the going shall be interpreted as a waiver of other rights. In this case it has been generous, and has said that though in, he may wage the contest as if out ” (p. 393).
But a change in the law was later enacted by the Legislature. In 1937 the Arbitration Law was repealed and some of its sections integrated with modifications in article 84 of the Civil Practice Act. Section 1458 was intended to meet the situation described in the Finsilver decision and to limit the party desiring to litigate the issue of the making of the contract or submission to a motion for a stay of the arbitration at the commencement of the proceedings or have his participation thereafter in the merits be deemed a waiver of such objection.
*90 Subdivision 1 of section 1458 distinctly enumerates the only grounds of objection to confirmation of the award left open after participation in the arbitration proceedings, and subdivision 5 of section 1462 (no valid submission or contract) is significantly omitted. Subdivision 2 of section 1458 specifically provides that if there be nonparticipation, the party may move for a stay or in opposition to confirmation on that ground and obtain a trial of that issue. (Although not of moment here, it may also be observed that such party may be limited solely to a motion for a stay within 10 days after service of a special notice of intention to arbitrate.)
There can be no doubt that under present law participation either in selection of the arbitrator or in any of the arbitration proceedings estops the raising of the jurisdictional issue as to the making of the contract providing for arbitration. If such party desires to contest on the merits as well as on such jurisdictional issue, he may do so now only by moving to stay the arbitration and having such issue disposed of first by the courts, thus permitting his later appearance on the merits before the arbitrators if that issue be decided adversely to him.
It must accordingly be held, as the Referee found, that petitioner may not on this application raise the question as to whether the parties entered into an agreement providing for arbitration of disputes thereunder.
The final objection to the awards is based on the contention that the arbitrators exceeded their powers in granting respondent damages for breach of contract in the sum of $26,880, when it had submitted as the subject matter of the arbitration its claim for such breach in the sum of $10,854. A careful analysis of the facts indicates, however, that the subject matter submitted for arbitration was petitioner’s obligations under a disputed contract and not a fixed claim for any specific figure.
After respondent had received the signed contract from petitioner’s broker, attempts at modification were made by petitioner. Apparently he made an offer of settlement when these proved unavailing, for, on September 9, 1949, respondent wrote him that “ Mr. Poliak [the broker] informed us this week that you had offered to settle our claim on the above [a description of the contract of July 14] for breach of contract, for $300.” Respondent then continued: “ This does not begin to cover our loss in this transaction. We entered into this contract with you in good faith and as you know with the rise in the market our damages amount to $10,854 for which amount we are enclosing herewith our debit note. Should you fail to pay same, there will be no other recourse but to demand arbitration accord *91 ing to the rules of the American Spice Trade Association ”. Attached was a “ debit note ” or bill showing that the difference between the contract price and the market value on August 15, 1949 (when respondent received petitioner’s first letter of repudiation) amounted to $10,854.
Thereafter, on September 28, 1949, respondent requested the association to proceed with the arbitration as follows: “ We purchased from Alfred Harris Inc. the above fifteen tons on American Spice Trade Association Contract [a full description of the contract being set forth above], and are having differences for execution. We wrote Alfred Harris Inc. on September 9th, demanding a payment for the difference on the contract of $10,854, failing which we claimed arbitration according to the rules of the American Spice Trade Association contract, giving the name of Mr. C. H. deJong, N. Y., as our arbitrator. We have received a letter in reply from Alfred Harris Inc. declining to pay this sum, and neither will they settle the dispute by arbitration.”
The ensuing arbitration was conducted, apparently in accordance with the usual practice of the association on “ future ” contracts, in two stages: (1) an arbitration as to whether there was an existing contract of purchase and sale; petitioner knew that this was the scope of the initial arbitration but raised no question concerning it; the hearing was held December 28, 1949 and the award made that day that the contract was still “ in force ”. (The contract, it will be recalled, was for the purchase of pepper shipped “ from the East during December 1949 to New York”, so that performance was still possible, as such pepper would not reach New York until February 7, 1950, and respondent could secure it to meet the contract at any time up to February 7); (2) a second arbitration was then conducted as to the damages, respondent having in the meantime requested delivery and advising petitioner of being in default if delivery were not made by February 7; this arbitration fixed the damages as of February 7, the last date of delivery under the contract, and due to the continued steep rise in the price of pepper the difference between contract and market price was now $26,880.
It is clear that respondent did not take an irrevocable stand that petitioner’s anticipatory breach entitled it to demand damages fixed as of that date and leaving it free to enter into any other contracts thereafter without being burdened by the outstanding “ future ” contract. The counteroffer to settle for $10,854 did not gain the status of a fixed, irrevocable claim merely because it was set forth in a bill and based on a market price computation. The language of the letters of September *92 9 and 28 clearly indicates that, in view of petitioner’s failure to pay the $10,854, respondent is requesting arbitration under the contract which provided that “ all questions and controversies, and all claims arising under this Contract” were to be settled by arbitration. The settlement offer having been rejected, respondent was at liberty to demand arbitration of all questions arising under the contract in accordance with the practice of the Association.
No valid objection can be raised to the proceeding being divided into two arbitration stages. It was within the province of the arbitrators to decide that the contract, being still in force, should be performed and that, for such nonfulfillment, damages were to be fixed at the latest date available for performance. Questions of anticipatory breach and dates of default are certainly within the scope of this broad arbitration clause. Had the price of pepper gone down instead of up, respondent surely could not have urged that the arbitrators were exceeding their powers in permitting petitioner to perform the contract simply because it had asked for a certain sum in settlement as of a prior date. Such latitude must be granted arbitrators under the subject matter of the controversy here submitted to them. The matter submitted was not a claim for $10,854 but a claim under a described contract which was disputed in its entirety by petitioner.
Moreover, it is my opinion that, even if respondent had demanded arbitration limited to a fixed claim for petitioner’s anticipatory breach, the arbitrators would have had the power under this sweeping clause to undertake a comprehensive study of all relevant factors and require either performance of the contract or payment of damages on the basis of a default date deemed by them to be proper and fair in accordance with the contract, market situation, trade practices and the acts of the parties. It does not seem to me that the courts should interfere with regard to the quantum of damages awarded in any arbitration proceeding (unless it be wholly without foundation), and surely not where the parties have entered into a standard trade contract providing for an arbitration under the rules of a trade association, which has been chosen by them as the forum for settlement of their differences because of special competence and experience in that field.
The motion to confirm the Referee’s report is accordingly granted. The original motions to vacate the awards are denied and respondent’s cross motion to confirm the initial award granted.
*93 The court has noted the stipulation of the parties to divide equally the fees of the Referee and the cost of the minutes. These will be provided for in the order to be settled hereon. The learned Referee is to serve and file an affidavit of services together with the stenographic bill, and the parties may serve and file any memoranda pertaining thereto in connection with the settlement of the order.