In the Matter of the Arbitration between LEON HELLMAN, Respondent, and SIDNEY WOLBROM, Appellant.

First Department, April 2, 1969.

478

*Lothar E. Nachman* of counsel (*Fein, Nachman, Shaw, Issler & Rosenberg,* attorneys), for appellant.

*Isaac Strahl* for respondent.

EAGER, J. P. The respondent (appellant here) appeals from an order confirming a purported award in arbitration and from the judgment entered thereon. The order was rendered and the judgment entered in a special proceeding instituted pursuant to article 75 of the CPLR by an application by the petitioner to confirm the award. A cross motion by appellant to vacate the award was denied.

The parties had been engaged as partners in the operation of a wholesale egg business. Upon termination of their partnership, the parties submitted certain disagreements to an orthodox rabbi for determination. The rabbi states that, when the parties " came to me with their controversy, they agreed that I conduct a Din Torah in the form of a ' pesher ' (arbitration or compromise). To this end, I had both of them

make a 'kinyan' (agreement) that they would abide by and obey my decision or award in the matter."

The appellant, admitting that he had agreed to submit to an arbitration before the rabbi known as a "Din Torah", insists that the agreement was for a "clear arbitration" and not "a compromise"; that the "two are distinct under Jewish law; one can submit to a Din Torah and one can submit to a compromise. We only agreed to have the Rabbi give a yes or no type decision, that is, the Rabbi was to determine whether the claims asserted are valid or invalid * * * the agreement did not allow the Rabbi to render a compromise decision."

The arbitration by the rabbi of the matters in controversy appears to have been authorized solely by the oral agreement of the parties. Although there was an arbitration clause in the written partnership agreement between the parties, it does not appear that the arbitration was had pursuant to the terms of such clause. It does appear that, on the termination of the partnership, releases were exchanged by the parties and such releases contained the written statement that there were specifically excluded "all matters presently pending for adjudication" before the rabbi. Such statement, however, was not intended and is not sufficient as a written arbitration agreement or submission agreement in compliance with CPLR 7501.

The rabbi held a number of hearings at which the parties allegedly presented evidence as to their respective contentions. Then, initially, the rabbi rendered a rabbinical judgment stating that the appellant was "obligated * * * within 30 (thirty) days to give a hand-shake (under rabinical outh) that you have sad the truth, in the event that Mr. S. Walbrom [appellant] will not give a hand-shake (under rabinical outh) within the above mentioned 30 days, Than is Mr. S. Walbrom obligated to give to Mr. Michuel Yehuda Hellman [petitioner] 5% according he is claiming from hem."

The parties did not comply with the terms of the rabbinical judgment. The rabbi states that the appellant did not appear within the 30 days to take the oath. Some months thereafter, following an appearance of the parties before the rabbi, he rendered an award in writing. The award, dated July 3, 1967, but not acknowledged until May 1, 1968, states that "in order that no oath or the like be taken by both parties a compromise similar to a rabbinit decision (is arrived at) that Mr. Wolbrom [appellant] is obligated to give to Mr. Hellman [petitioner] Seven thousand do dollars (7,000) and this settles and removes all claims." The appellant alleges that he did not receive a

copy of this award and had no knowledge thereof until the service of the petition and notice of application to confirm it.

Clearly, the proceeding before the rabbi was not intended to have and did not have the attributes of an arbitration coming within the provisions of article 75 of the CPLR. There was absent the threshold requirement of a proper written agreement (see CPLR 7501); the rabbi did not take the required oath (see CPLR 7506, subd. [a]); and, in general, his proceedings were conducted in accordance with religious practices and customs rather than in compliance with statutory requirements.

It has been a long-established general rule that if the parties desire the aid of the statutory provisions for the enforcement of an arbitration award, they must comply with the statutory requirements with respect to a written arbitration agreement or written submission agreement. (See Sturges, Commercial Arbitrations and Awards, § 3, p. 9; *Diedrick* v. *Richley*, 2 Hill 271, 272; *Cope* v. *Gilbert*, 4 Denio 347; *Matter of Colwell Worsted Mills* [*Glass*], 228 App. Div. 150; *Electric Steel Elevator Co.* v. *Kam Malting Co.*, 112 App. Div. 686; *Matter of Buckley* [*Lippman*], 223 N. Y. 539; *Matter of Concrete Steel & Tile Constr. Co.* [*Green*], 65 Misc. 210, affd. 136 App. Div. 928. See, also, Seventeenth Annual Report of N. Y. Judicial Council, 1951, pp. 239, 240, citing *Sanford Laundry* v. *Simon*, 285 N. Y. 488; *French* v. *Petrinovic*, 184 Misc. 406.)

There is no indication in the CPLR provisions that this rule was to be abandoned. CPLR 7501, furnishing the basis for the jurisdiction of the court in a special proceeding in an arbitration matter, provides that a "written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award."

Also, in Weinstein-Korn-Miller (N. Y. Civ. Prac., vol. 8, par. 7501.10), it is stated that " [t]he function of the CPLR provisions relating to arbitration is to give effect to written agreements providing for arbitration, rendering them irrevocable and subject to specific enforcement, and to provide for enforcement of arbitration awards by the direct entry of judgments on them as in actions at law. Common-law arbitration based on oral agreements or written ones which do not comply with the statutory requirement existed under the Civil Practice Act, and, although such agreements were not specifically enforceable and were revocable even during the arbitration proceeding, a cause of action merged in an award and the

award could be enforced by action. This effect of a common-law arbitration remains unchanged under the CPLR." This is in accord with the statements in the Second Preliminary Report of the Advisory Committee on Practice and Procedure (1958) at page 130.

The petitioner, however, insists and Special Term held, that the continuation by the appellant with the arbitration without objection amounted to the waiver of the statutory requirements. The petitioner refers to CPLR 7510 and 7511, and also cites certain decisions in which the courts have broadly stated that a party who participates in arbitration proceedings, may not challenge the award on the ground of the absence of valid arbitration agreement. (See *Matter of National Cash Register Co. [Wilson]*, 8 N Y 2d 377; *Matter of Bay Iron Works [Eisenstein]*, 17 A D 2d 804; *Matter of Ingardia Constr. [Dyker Bldg. Co.]*, 14 A D 2d 23, affd. 11 N Y 2d 726; *Matter of Classic Togs* v. *Joint Bd.*, 27 Misc 2d 598; *Matter of Simplex Tool [Swind Mach. Co.]*, 16 Misc 2d 85; *Matter of Harris [E. India Trading Co.]*, 16 Misc 2d 87.) In each of these decisions, however, there was a purported statutory arbitration claimed to be supported by an underlying written agreement. Under those circumstances, a party's participation in the arbitration could constitute a waiver of his right to question his assent to the agreement or the scope or continuing existence of the agreement. But the decisions are not controlling where, as here, there is absent the threshold requirement of a written arbitration or submission agreement.

It is true that CPLR 7510 provides that the court shall confirm an award unless the award is vacated or modified on a ground specified in CPLR 7511 and that the latter section does not authorize an application by a participating party to vacate an award on the ground that there was no valid agreement to arbitrate. But, clearly, a right in the petitioner to maintain a special proceeding to confirm the award is not created by a lack of statutory authority in the respondent to maintain such a proceeding to vacate the award. In any event, these sections do not have reference to an award which merely has common-law status.

This court has considered the question whether the matter should be remanded to Special Term for a hearing to determine whether or not the parties intended a binding statutory arbi-tration with waiver of statutory requirements and to determine the nature and extent of the issues which the parties orally agreed to submit to arbitration and which were voluntarily submitted by them for determination by the rabbi. Neither

of the parties, however, has requested a hearing or suggested such remand. Furthermore, in view of our conclusion that this special proceeding was unauthorized, a remand for a hearing and the granting of relief on the basis thereof would have the effect of endowing the special proceeding with the dignity of a plenary action without the safeguards of proper pleadings and the usual pretrial procedures applicable to an action. If, without consent of the parties, we may disregard the form of the proceeding as originally brought and direct proceedings as in an action (cf. *Matter of Lakeland Water Dist. v. Onondaga County Water Auth.,* 29 A D 2d 1042; *Matter of Mandis v. Gorski,* 24 A D 2d 181), the circumstances do not justify the procedure. Furthermore, the dismissal of this proceeding without relief to either party will not leave them without a proper remedy; they will merely be remitted to the remedy of a proper action.*

The order, entered August 30, 1968, and the judgment entered thereon, should be reversed and vacated, on the law, without costs and disbursements, and the application of the petitioner to confirm the award and to enter judgment thereon should be dismissed, without costs. The cross motion of the appellant to vacate the award should likewise be dismissed, without costs. (See *Electric Steel Elevator Co. v. Kam Malting Co.,* 112 App. Div. 686, *supra.*)

Capozzoli, Nunez and Steuer, JJ., concur.

Order and judgment entered on August 30, 1968, and September 6, 1968, respectively, reversed and vacated, on the law, without costs and disbursements, and the application of the petitioner to confirm the award and to enter judgment thereon dismissed, without costs; and the cross motion of the appellant to vacate the award dismissed, without costs.

---

* It seems that the Statute of Limitations (see CPLR 215, subd. 5) may not be applied to bar such action, if promptly commenced (see CPLR 204, subd. [b]; 205, subd. [a]).