OPINION OF THE COURT
Elliott Golden, J.
STATEMENT OF FACTS
Petitioner moves by order to show cause for an order vacating an arbitration award of a rabbinical court (Beth-Din).
*572 The underlying facts which give rise to the disputes herein are as follows: The petitioner, Josephs Meisels, and the respondents, Alexander and Moses Uhr, were business associates, having formed a partnership or partnerships through which they purchased, operated and owned three parcels of realty: one each located in New York County, Kings County, and Queens County. At some point in time and as a result of allegations of fraud and mismanagement, etc., against each other, they decided to terminate the partnership. They apparently negotiated a settlement by which the interests of the Uhrs were purchased by Mr. Meisels, and all other claims in dispute between them were allegedly resolved.
It is alleged by the Uhrs that the petitioner, after entering into the agreement, seized full control over the two remaining Kings and Queens County properties, had excluded the Uhrs from the operation of the properties and had withheld income rightfully due them from the said properties. The Uhrs further contend that a second document attached to the executed July 17, 1987 agreement is an adjustment sheet which indicates that an additional $52,000 was due the Uhrs. The document bears signatures which appear to be the petitioner, Mr. Meisels, and the respondents, the Uhr brothers.
As a result of these alleged disputes, the substance and full extent of which, prior to January 21, 1988, are not fully developed in the motion papers, a meeting was held on that date. Present at the meeting were the parties, their attorneys or advocates, and Rabbi Meisels. After a discussion among those present, the parties entered into the January 21, 1988 "Irrevocable Consent to Arbitrate”, and as will be more fully developed hereinafter, agreed to submit certain unspecified disputes to a Beth-Din (tribunal) to be constituted by Rabbi Meisels and two other rabbis to be elected by him.
Thereafter on February 22, 1988, a three-Judge tribunal consisting of the above-named rabbis convened its initial session. At this first session a bill of arbitration was drafted and executed which contained a consent to the choice of the three individual rabbis named and a concurrence with their authority to conduct the proceeding to resolution. As one of its initial acts the tribunal was called upon to vacate three prior writs of disobedience (siruvs) issued against the petitioner by previously consulted Beth-Dins. The Beth-Din, as a result of this request for interim relief and in consideration of petitioner’s submission to the Beth-Din, issued several interim orders.
*573 Between February 21, 1988 and June 12, 1988, over a dozen sessions were held. It would appear that in accordance with common practice, and accepted Judaic procedures related to Beth-Din proceedings (and in accordance with the terms of the bill of arbitration), the Beth-Din held independent discussions with both parties regarding a possible settlement of the dispute. It is conceded that Jewish and civil law acknowledges the propriety of these discussions and they were consented to with the knowledge of all parties involved. A written award was ultimately made on June 23, 1988, and delivered to all the parties.
After the June, 23, 1988 award was announced, it is alleged by respondents that the rabbinical advocates for the parties expressed confusion as to the mechanics of the option and requested a clarification. Thus, it is alleged that in compliance with the request of both parties the Beth-Din on June 28, 1988 issued a "nisspoch” or appendix to the award of June 23, 1988, which allegedly clarifies the mechanics of executing the judgment of the Beth-Din. Then again, on August 31, 1988, an additional document was issued by the Beth-Din. The effect and status of this document is also in dispute.
ARBITRATION AS A DISPUTE RESOLUTION DEVICE
The use of arbitration in dispute resolution situations has proliferated over the last three decades. Not only has there been an increase in the number of arbitrations in the traditional arbitration forums, there has also been a proliferation in the establishment of both governmental and private forums and panels. We have seen the establishment of specialized rules and procedures for conducting arbitrations within limited associations and organizations. With the establishment of trade associations, commercial dealers and contractors groups and extensive and sophisticated pension plans has come the creation of dispute resolution mechanisms tailored to the unique problems and rules governing each of these organizations. The need for expansion of arbitrations as a method of resolving intragroup conflicts is well recognized. That is especially true when you factor in the proliferation of State court litigation. Were State courts required to absorb the explosion of dispute resolution situations created by these contractual rights contest, the system would be bogged down. Already overburdened facilities and resources would be taxed beyond acceptable limits.
*574 The necessity for an alternate mechanism for dispute resolution is clear and the establishment of a general public policy to this end has clearly been adopted.
The relaxation of legal formalities has been accepted as tradeoff for a simplified expedited resolution process; but there should not be a relaxation of the requirements of fairness and impartiality and the requisite mandate of doing "substantial justice under the circumstances.”
In the instance before this court we have an arbitration forum whose history predates by hundreds of years the development of more sophisticated legal and quasi-legal forums. While we should give due recognition to the Beth-Din’s rich history, and positive influence on modern legal institutions, we should also give recognition to its unique extrajudicial role. It is a forum created to minister to the judicial needs of a unique religious community. The Beth-Din is a specialized forum created and constituted to apply two legal disciplines. The Beth-Din must balance substantive and procedural principles so as to satisfy both Judaic law and decisional mandates and New York procedural rules for recognition of its judgment.
In this court’s view, analysis of the matter before us must begin with consideration of the scope of its review. It is well settled that this court may concern itself with only two threshold issues: Whether a valid arbitration agreement has been made by the parties, and whether the agreement has been complied with. (See, Matter of County of Rockland [Primiano Constr. Co.], 51 NY2d 1.)
THE AGREEMENT TO ARBITRATE
This court has received and reviewed controlling documents, and believes there are substantial questions both as to the validity of the bill of arbitration as well as the breadth and scope of the arbitration agreements. Since there are claims of excessiveness raised by petitioner, this court, within the permissible bounds of CPLR article 75, must review and determine whether by its terms the "bill of arbitration” accomplishes its statutory task, i.e., becomes the jurisdictional document that meets the standards of CPLR 7501.
It has been held that: "[Initially this court must] determine whether [the contracting] parties have agreed to submit their disputes to arbitration [and which disputes those are] and, if so, whether the disputes [as submitted] generally come within *575 the scope of their arbitration agreement.” (See, Sisters of St. John the Baptist, Providence Rest Convent v Geraghty Constructor, 67 NY2d 997, 998.)
Further, a claim of limitation of the arbitrator’s power is not waived by virtue of the objecting party’s failure to move for a stay of the proceeding during the proceeding. Applications for a stay of arbitration during the proceeding generally will not be granted unless the entire controversy is nonarbitrable. Therefore, although neither party has raised an objection to the validity of the arbitration agreement it is no impediment to the court’s review at this time.
The facts show that petitioner Joseph Meisels and Alexander and Moses Uhr, the respondents herein, signed a document which purports to be an agreement to arbitrate. Although the document submitted is undated, the parties conceded it was signed on January 21, 1988. This document is written on a plain lined piece of paper without letterhead in Talmudic Hebrew. On page two of the document there appear three signatures in both Hebrew and English. According to the translation submitted, the January 21, 1988 document appears to be an agreement by the parties herein to submit themselves to a "Beth-Din” "on all the disputes between them and as well on three buildings” previously enumerated. After reciting symbolic consideration, the January 21, 1988 agreement contains a provision that the parties undertook to appear before a three-rabbi tribunal, two of which were to be subsequently chosen by Rabbi Abraham Meisels. It further provides that once the Beth-Din was constituted it would commence proceedings no later than February 21, 1988. As a further provision of the January 21 agreement, the parties agreed not to "address any (non-religious) civil tribunals even for the mere purpose of injunction” without the permission of the above-mentioned (tribunal) "Beth-Din.” This restriction on the parties’ rights is further qualified by a penalty clause, which provides that any resort to a civil tribunal which "may cause a loss to his adversary” and/or that party does not obey the Beth-Din, under the discretion and authority of the Beth-Din "as seen by the Beth-Din * * * shall have deprived himself from any right that he has in these assets [it is assumed the three buildings] and that the 'Beth-Din’ may grant a judgment accordingly.” Based upon this default provision, the Beth-Din could enter judgment of default and the party in whose favor it would issue could resort to a civil tribunal to enforce this judgment of violation.
*576 It is necessary for this court to review the effect of the January 21, 1988 agreement in conjunction with the document referred to in the submissions as the "bill of arbitration”. Before this court passes on the meaning and effect of this earlier document, the court feels it appropriate to set forth the terms of the bill of arbitration. This second document apparently was signed on February 22, 1988, at the first session, or meeting of the full three-member panel of the Beth-Din. This bill of arbitration is a document that is required under traditional Jewish law in order to duly constitute and empower a Beth-Din arbitration and is alternately referred to herein as a mediation note or under its Hebrew title "Shtar Berurin”.
The "bill of arbitration” provides a consent to an arbitration before three individually named rabbi Judges, including Rabbis Silber and Ginsberg, who apparently had by then been designated by Rabbi Meisels. The bill of arbitration contains a further agreement that the parties "undertook” upon themselves to fulfill the judgment to be granted by the tribunal without complaint or reservation. There is also reference to an earlier agreement made between the parties and executed in front of Rabbi Meisels. Although not specifically described, the court assumes this reference is to the January 21, 1988 agreement to arbitrate although not specifically identified.
The effectiveness of the arbitration agreement as a jurisdictional document must be viewed both in the context of CPLR 7501 as well as applicable religious legal tenants. We turn first to the Judaic legal requisites of a "Shtar Berurin.” Jewish judicial and arbitral institutions have come to serve Orthodox Jews regardless of their country of domicile. Throughout their development, special rules and procedures have also developed. It is generally recognized these Din Torahs are governed by Talmudic and Judaic law for procedural form and structure. Although many rules are at variance with New York procedural law, the one requirement common to both is the necessity for a properly drafted agreement. Jewish tradition and law required that a note or bill of arbitration must be drafted which memorializes a consent by the parties to submit to arbitration and which designates the form of the proceeding.
In more common forms of arbitration agreements the scope of the arbitration can be broad or can be limited, depending on the language of the arbitration clause. Arbitrable issues usually can be readily discerned from an underlying contract *577 which contains the arbitration clause. But in a Beth-Din arbitration the issues to be submitted must be specifically set forth in the bill of arbitration. It is primarily because there is no underlying agreement which defines the legal issues reserved to arbitration. Thus under Judaic law, the separate agreement is equivalent to an arbitration clause but without the clearly defined issues which can be referred to arbitration and it is recognized that, as to a Beth-Din tribunal, any decision on an issue or a dispute not specifically included in the issues to be submitted to the Beth-Din (as contained in the note of arbitration) renders the determination of the rabbinical panel void to the extent that it passes on or renders a judgment on issues not specifically submitted to it. (See, Elon, Principles of Jewish Law, Arbitration.)
The requirement of a written arbitration agreement which is expressed and unequivocal as to the issues or disputes to be submitted to the Beth-Din is equally as important to New York State procedural law as it is to Judaic law. As a general rule if the parties at any point seek to avail themselves of the statutory provisions of CPLR article 75 for the enforcement of an arbitration award, they must comply with statutory requirements with respect to a written arbitration agreement or written submission agreement. (Matter of Heilman [Wolbrom], 31 AD2d 477.) The agreement must therefore set forth specifically those disputes that the arbitrators shall resolve as well as give recognition to the mutuality of the parties’ consent to the arbitration.
The effect of having an arbitration agreement which does not comply with CPLR 7501 is that the agreement and arbitration remains only a common-law proceeding with an unenforceable award. A deficient agreement of arbitration will deny the award the right of New York State court enforcement, or entry of judgment based upon the award. (Matter of Heilman [Wolbrom], supra.) It has been further held (Matter of Heilman [Wolbrom] supra) that if the special proceeding (by way of religious court arbitration) was unauthorized, then to remand it to judicial hearing or back to the religious forum would bestow upon it a status which it does not presently enjoy. Stated another way, if the written arbitration agreement fails to comply with CPLR 7501, the decision of the Beth-Din then becomes unenforceable in State court for any purpose. Any defect in the award, either procedural or substantive, therefore, should not be resolved by this court. Further, if this court finds the bill of arbitration is defective, *578 the arbitration as submitted to the Beth-Din, is likewise defective, and then no purpose is served in referring it back to that religious forum to correct the defect.
This court is empowered, upon a finding that the arbitration agreement fails to comply with CPLR 7501, or that there is no valid written submission to arbitration, to disregard the decision and leave the parties to pursue the matter in an appropriate action (plenary) or attempt to resubmit it to the Beth-Din in a statutorily recognizable fashion. Certainly this does not account for, or consider the communal consequences that may result to the parties. We have seen the beginnings of such machinations as they have been exhibited to this court in the most recent papers submitted, and find such coercive attempts to stifle legitimate dissent to be patently offensive.*
The bill of arbitration with or without irrevocable consent to arbitrate, taken together or independently, must contain a statement of what issues the parties agreed to arbitrate for it to meet the requirements of CPLR 7501. If the documents fail to set forth adequately, and with the requisite degree of specificity, those particular disputes and issues that the parties intended to submit to arbitration, as a matter of general contract construction they are inadequate. The voluminous affirmations submitted by the respective parties and the rabbi panelists indicates to this court that there was no clear definition and understanding by the parties of the issues to be resolved by the tribunal. Although there may have been a general understanding of the dispute between the parties at the time the January 21, 1988 and February 1988 agreements were drafted and executed, the documents themselves fail to recite the requisite clear intent of the parties. Respondents, either by design or through confusion, were unable to state to this court with specificity the basic issues presented to the *579 Beth-Din for resolution. Although there may have been an understanding of the parameters of the submitted issues on January 21, 1988, and although Rabbi Meisels may have understood the scope and nature of the issues and the disputes when he drafted the irrevocable consent to arbitrate, the language of the document is too broad and vague and thus fails to inform this court of that understanding. Even if the parties adequately expressed and conveyed to this court their understanding and intent on January 21, it would be insufficient. We must determine whether the award conforms to the issues defined in the written submission. We are not empowered to make a finding of fact as to the disputed understanding of the issues. The bill of arbitration on the face must evidence a mutual consent to the jurisdiction of the Beth-Din as to specific disputes clearly outlined and defined.
While we are mindful that broad language submissions of cases to arbitration have been held to be valid, this is not one of those situations where such language can bestow authority on an arbitration panel. Generally, broad language arbitration clauses as found in commercial agreements must be clear and the contract must encompass the subject matter of the particular dispute. (See, Matter of Baime [Martin’s], 88 AD2d 595.) In a separate "bill of arbitration”, the language of the agreement must be such that the court can glean from it the clear intent for the Beth-Din panel to resolve specific issues and disputes. If the court, as here, cannot determine from the bill of arbitration what the specific disputes are, then it is equally clear that the arbitrator may engage in a process which will result in an award or a disposition of a party’s rights which were never clearly intended to be submitted to the Beth-Din forum. It was therefore of the utmost importance that the bill of arbitration be specific and pinpoint issues for resolution.
The law is clear that an agreement to arbitrate must be express, direct and unequivocal as to the issues or disputes to be submitted to arbitration. This principal is particularly applicable in the instance of a limited arbitration clause. (Gangel v DeGroot, 41 NY2d 840; Shuffman v Rudd Plastic Fabric Corp., 64 AD2d 699.) As further stated in Gangel (41 NY2d, supra, at 841): "an arbitration clause must be read conservatively if it is subject to an equivocal reading”.
We therefore find that the bill of arbitration, dated February 21, 1988, is silent as to the issues to be considered by the arbitration panel and thus is fatally deficient. Even if we were to read into this agreement by reference the terms of the *580 January 21, 1988 agreement relating to "all the disputes between them as well as the three buildings”, the description of the disputes therein is nonetheless legally insufficient. The requirement that a written arbitration agreement adequately comply with CPLR 7501 is not met here and the parties have thus failed to properly submit their disputes to the Beth-Din. At best, in the January 21, 1988 agreement you have a recitation of the existence of disputes in the preamble, which as a matter of contract construction fails to constitute an agreement as to specific terms and issues in dispute, and is invalid and a nullity for all purposes under CPLR article 75.
CONCLUSION
It is not without hesitation that this court would nullify the determination of a forum comprised of learned and dedicated rabbis which, as previously indicated, predates our modern judicial systems and has contributed immeasurably to our legal institutions. Nevertheless, and despite what this court perceives to have been a sincere attempt to resolve conflict, the flawed manner of the Beth-Din arbitration proceeding which is the subject of this controversy requires such a nullification, and suggests that stricter observance to secular requirements be adhered to. In so doing, the rich tradition and effective utilization of this revered dispute resolution institution can be enhanced and strengthened so as to effectively coexist within a modern society.
The petition before this court seeks the vacature of a Beth-Din arbitration award allegedly rendered on June 12, 1988. A simple denial of the relief sought by the petitioner upon a finding that no such award was rendered would have "begged the issue” and left totally unresolved a determination as respects the viability and validity of the actions taken by the arbitration panel. It is the actions of the arbitration panel which are sought to be reviewed by this petition, and anything less than a consideration of the entire event and the resultant determinations would be wholely inadequate. Furthermore, since the inception of these proceedings, and as an outgrowth thereof, the court has become aware of other litigation instituted by the respondents herein, seeking to confirm as the Beth-Din’s award the determination of June 23, 1988. Suffice it to say that the considerations and determinations relative to this proceeding are equally as relevant to, and determinative of the issues raised in the subsequent proceeding.
*581 It is the decision of this court that the petitioner’s motion to vacate the arbitration award rendered by the Beth-Din arbitration panel herein as respects the dispute between the petitioner and the respondents be granted, upon the following determinations:
(1) The petitioner herein has failed to sustain his burden of establishing bias or partiality on the part of the Beth-Din arbitration panel or any of its members.
(2) No basis has been established to vacate the award by reason of the failure of the arbitrators to comply with the procedural requirements calling for themselves to be sworn, or for not having administered an oath to witnesses testifying before them inasmuch as the conduct of the parties constituted a waiver of those requirements.
(3) No infirmity in the proceedings has been established as respects the petitioner’s claim of misconduct by either the parties or the arbitrators by reason of alleged "ex parte” discussion.
(4) The arbitration proceedings and the panel’s alleged determinations and awards are fatally flawed and are in all respects vacated by virtue of:
(a) the deficient consent to arbitrate of January 21, 1988, and bill of arbitration of February 22, 1988, in their failure to properly identify the issues or disputes to be resolved;
(b) the penalty and forfeiture provisions of said bill of arbitration read in conjunction with the earlier consent to arbitrate, which are so repugnant to public policy as to render them void and unenforceable;
(c) the failure to properly announce and/or deliver the alleged award of June 12, 1988, if in fact an award was then rendered;
(d) the excessive nature of the award rendered June 23, 1988 in rendering determinations beyond the scope of the intended authority of the Beth-Din, and which
(i) was so imperfectly executed as to deny to the disputants a final and definitive award, and
(ii) was impermissibly modified without adherence to legal requirements allowing therefor.
(5) The check in the sum of $600,000 given by the petitioner *582 as a deposit, and held by the Beth-Din, shall forthwith be returned to the petitioner inasmuch as there is no legally cognizable proceeding before the arbitration panel which gives them the right to retain the same.

 Annexed as an exhibit to petitioner’s November 1, 1988 affirmation is a two foot by four foot poster allegedly affixed to street poles in the Borough Park, Flatbush and Williamsburg (Orthodox Jewish) communities, with petitioner’s photograph thereon, together with a reproduction of letters from previous Beth-Dins religiously condemning him for resorting to the civil courts, and notwithstanding the fact that these "Writs of Disobedience” were to have been vacated and recalled.
The poster also duplicates the legal back for the notice of petition herein with the caption setting forth the names of the parties (except as to the last name of respondents Uhr) and identifying petitioner’s attorney. Other documents on the poster appear to be letters from a congregation and one of the rabbinical courts which petitioner alleges is only part of the pressures and threats being exerted on the petitioner to withdraw this proceeding.