MARGARET AGUR, Appellant, *v.* MORDECAI M. AGUR, Respondent.

Second Department, April 7, 1969.

*Lifschitz & Lifschitz* (*Lawrence H. Levinson* of counsel), for appellant.

*Edelstein & Schneier* (*Saul Edelstein* of counsel), for respondent.

HOPKINS, J. The proceeding is to obtain a judicial award of custody of the parties' infant son, awards for the child's support and for a counsel fee, and other related relief. The parties were married in 1960, and in 1962 their son was born. In 1967 the petitioner obtained a bilateral Mexican divorce decree which incorporated a surviving separation agreement which had been executed by the parties in 1966. The question before us is whether the custody of the child shall be arbitrated in accordance with the provisions of the separation agreement.

The provisions of the agreement may be summarized, though the exact language has been set out in the margin.[1] It provides that, in conformance with Jewish religious law, the petitioner shall have custody of their son until his sixth birthday, at which time the respondent shall have custody. It provides that the petitioner waives any alimony for herself and support for the child while she has his custody. Finally, it provides that any controversies arising between the parties shall be arbitrated under Jewish religious law by three persons, one to be chosen by the petitioner, one to be chosen by the respondent, and the two so designated to choose an orthodox rabbi as the third, all of

---

1. "SECOND: The Wife shall have custody of The Child until The Child's sixth birthday. After The Child's sixth birthday, The Husband shall have custody of The Child. The intention of this custody provision is to conform with Jewish religious law.

\* \* \*

"THIRD: The Wife waives any alimony for herself and support for The Child while The Child is in her custody."

\* \* \*

"FOURTEENTH: If, any controversy should arise over the meaning, interpretation or application of any part of this agreement, the parties agree to submit such controversy to arbitration. Each party shall designate an arbitrator. The arbitrators so designated shall select an Orthodox Rabbi as a third arbitrator. The decision of the three arbitrators so designated and selected shall be final.

\* \* \*

"4. The following shall be added to Clause Fourteenth of the agreement: The parties agree that any controversies arising between them shall be arbitrated under Jewish religious law. It is agreed, therefore, that the arbitrators mentioned in Paragraph Fourteenth shall be persons who are versed in such law and it is further agreed that if the three arbitrators cannot agree the decision of two shall be final."

whom are to be versed in Jewish religious law; and that, if the three arbitrators cannot agree, the decision of two shall be final.

Less than a month before the child attained his sixth birthday, the petitioner began this proceeding for the custody of the child.[2] Her petition alleged that the best interests and welfare of the child required that she retain his custody, that in her belief Jewish religious law does not provide that the respondent must have custody after the child reaches his sixth year, and that the respondent's temperament and emotional responses rendered it necessary that the custody of the child should not be placed with him. In support of the latter claim, the petitioner asserted that three orders of protection had been issued by the Family Court against the respondent, based on threats made by him toward the petitioner and the child. The petitioner alleged that she had been compelled to agree to the provisions of the separation relating to custody because the respondent refused to consent to a Jewish religious divorce otherwise. She claimed that the respondent intended to remove the child to Israel, whereas the welfare of the child demanded that he be reared and educated in the United States.

In his answer the respondent, depending on the separation agreement, requested a stay of the proceeding and a direction that the parties arbitrate their differences. Moreover, he alleged that it was the petitioner, rather than himself, who had initiated the negotiations for a separation agreement; and that it was he, rather than she, who had been under duress. But he further alleged that the arbitration award would still be subject to the supervisory power of the court, which could treat the determination as a nullity if it conflicted with the best interests of the child. Nevertheless, he asserted that in his opinion both parties would violate their religious code if he did not obtain custody of their son at age six, especially since he had granted to the petitioner a right to a religious divorce. To his answer was attached a decision of a rabbinical court, signed by three rabbis, stating that according to Jewish religious law the custody of a male child over six years of age belongs to his father.

The petitioner, in reply, pointed out that the arbitration clause compelled the award of the custody of the child to be founded on religious tenets solely; and she said that that constraint made the clause unenforceable. Lastly, she stated that she did not contend that the separation agreement was void because she

---

2. The petitioner also sought an order granting her $75 a week for the support of the child; she alleged that the respondent had not been making any payments for the child while the latter was in her custody.

signed it under duress; and that she had described the circumstances under which she signed it in order to explain the presence of the arbitration clause which she regarded as objectionable.

Special Term, on these papers and without a hearing, granted a stay of the proceeding and directed arbitration, under the authority of *Schneider* v. *Schneider* (17 N Y 2d 123); *Sheets* v. *Sheets* (22 A D 2d 176); and *Matter of Lasek* (13 A D 2d 242), judged to be controlling on the issues.

We advance for brief consideration the preliminary question whether the arbitration clause takes into account the dispute of custody. We think that it does. It includes as a subject for deliberation " any controversy * * * over the * * * application of any part " of the agreement. The agreement contains specific reference to the relative rights of the parties concerning the custody of their son. There is hence no need to deal with implication, for the agreement directly entertains the subject. Even if the reference in the agreement were oblique (which it is not), the expanse of the clause permits arbitration. " Once it be ascertained that the parties broadly agreed to arbitrate a dispute ' arising out of or in connection with ' the agreement, it is for the arbitrators to decide what the agreement means and to enforce it according to the rules of law which they deem appropriate in the circumstances " (*Matter of Exercycle Corp.* [*Maratta*], 9 N Y 2d 329, 334).

The true and dominant issue is whether arbitration should be directed under the peculiar circumstances of this case. The basic principles governing the custody of infants are beyond debate. The State, succeeding to the prerogative of the crown, acts as *parens patriæ*. Sometimes the power is exercised legislatively (Domestic Relations Law, § 109, subd. 6; § 111, cf. *People* v. *Ewer*, 141 N. Y. 129, 133–135), sometimes constitutionally (N. Y. Const., art. VI, § 32), but usually by the court. " The chancellor in exercising his jurisdiction upon petition does not proceed upon the theory that the petitioner, whether father or mother, has a cause of action against the other or indeed against any one. He acts as *parens patriæ* to do what is best for the interest of the child. * * * He is not adjudicating a controversy between adversary parties, to compose their differences " (*Finlay* v. *Finlay*, 240 N. Y. 429, 433–434).

Thus it is that agreements by parents as to custody of their children are never final but subject always to the supervening power of the court (*People ex rel. Rowe* v. *Rowe*, 11 A D 2d 759; *Bleck* v. *Bleck*, 1 A D 2d 839; *Van Dyke* v. *Van Dyke*, 278 App. Div. 446). The court gives attention to the agreement, not because the parties' compact binds the court, but for the light it

sheds on the motives and disposition of the parties (cf. *Matter of De Grace* v. *Leonard*, 29 Misc 2d 11).

An agreement to arbitrate custody is not distinguishable from an agreement to give custody. The process of arbitration is useful when the mundane matter of the amount of support is the issue (*Schneider* v. *Schneider,* 17 N Y 2d 123, *supra*; *Sperling* v. *Sperling,* 26 A D 2d 827; *Goldenberg* v. *Goldenberg,* 25 A D 2d 670; *Matter of Lasek,* 13 A D 2d 242, *supra.*) It is less so when the delicate balancing of the factors composing the best interests of a child is the matter at hand. At least, the amount of support, though assuredly not a mere arithmetical calculation, does involve the consideration of fairly precise items. The welfare of a child, presenting a congeries of many immeasurable and intangible elements, often of a highly individualized character, cannot be so easily comprehended.

Indeed, the nature itself of the process of arbitration conveys a sense of inexpedience for the determination of such an intricate problem. There is no assurance of the qualifications of the arbitrators, no necessity that the parties nominate persons whose background or competence would certify a provident decision (cf. *Matter of Astoria Med. Group* [*Health Ins. Plan of Greater N. Y.*], 11 N Y 2d 128, 133).[3] Nor can the arbitrators' award, once made in accord with formal requirements, be reviewed except under the narrowly limited grounds of the statute (CPLR 7511, subd. [b]). The court may not vacate the award because of a mistake of fact (*Matter of Weiner Co.* [*Freund Co.*], 2 A D 2d 341, affd. 3 N Y 2d 806) or a " perverse misconstruction " of law (*Matter of S & W Fine Foods* [*Office Employees Int. Union, Local 153, AFL-CIO*], 8 A D 2d 130, 131, 132, affd. 7 N Y 2d 1018). Too, the setting of arbitration stresses the settlement of a private dispute: the award ends the dispute by declaring that one or the other parent is granted custody. Under judicial standards, the court is not bound to grant custody to either parent, but may decide that in the child's best interests neither should have custody. In short, the judicial process is more broadly gauged and better suited to reach the ultimate objective.[4]

---

3. The same observation has been made of Judges (FOSTER, The Family in the Courts, 17 Univ. Pitt. L. Rev. 206, 250–251). But the Judge has available to him a method whereby the advice of social workers, psychologists and psychiatrists can be procured (N. Y. Const., art. VI, § 13, subd. c; Family Ct. Act, § 115, subd. [b]; § 653; Domestic Relations Law, § 240).

4. It is doubtful, too, whether the usual advantages of dispatch, decreased expense, and flexibility of procedure inherent in arbitration have substantial value when the court may require a hearing subsequent to the arbitration.

Certain of these considerations were discussed in *Sheets* v. *Sheets* (22 A D 2d 176, 178–180, *supra*), which recommended the use of a two-stage procedure in enforcing arbitration clauses in relation to the custody of children. *Sheets* did not direct the use of the procedure under the facts before the court, for the court affirmed an order staying arbitration. In a proper case the court suggested that the issue of custody could first be determined by the arbitrators and then, by a direct proceeding affecting the child alone, or on confirmation of the award, the supervisory power of the court could nullify the arbitrators' decision, if it were contrary to the child's best interests.

We harbor grave doubt whether such a two-stage procedure could have wide application. Of necessity, the second stage of the suggested course of action takes precedence over the first—to such an extent that duplication of time, expense and effort seems inevitable.[5] Nor does it seem advantageous to the best interests of the child that the question of custody be postponed while a rehearsal of the decisive inquiry is held. We harbor no doubt, however, that this case does not present cause for the use of the arbitration process.

First, the parties by their agreement have restricted the area of decision to one relevant factor alone—the effect of Jewish religious law. Unquestionably, the religious faith of the child and of the parties has strong bearing on the question of custody, but it is not the only factor which the court properly should consider. Other important factors—the emotional stability and the relative posture of the parents, the place of rearing, and the education of the child—have been directly raised in this proceeding.

Second, and as a related reason, the agreement limits the choice of arbitrators to those versed in Jewish religious law. Though arbitrators possessed of that qualification might well be appropriate for certain questions which could arise under the agreement, the exclusion of persons having other and as pertinent qualifications for the determination of custody impairs the efficacy of the arbitration, even in a two-stage procedure.

Third, the court at a hearing can accept evidence of Jewish religious law from both parties as part of the relevant data upon which it will render its decision of custody. In assessing the total evidence and pondering the welfare of the child it can properly put into focus the expression of intent by the parties

5. Of course, arbitration of less weighty aspects of custody, i.e., the consideration of visitation rights, may well be valuable and desirable, especially when the agreement of the parties does not inordinately limit the arbitrators. But the value and desirability of arbitration are matters for the court to decide.

that Jewish religious law shall be given high place in the factors governing the custody of the child. It can appraise as well the claim of the petitioner that her need for the respondent's consent to a religious divorce dictated her acquiescence to a transfer of custody to the respondent when their son would become six years old.

In brief, no apparent exigency will be served by arbitration, and the limited function of the arbitration as stipulated by the parties will not serve the court in discharging its duties as *parens patriæ*. As to the petitioner's application for allowance of counsel fees, that cannot be granted now; such an allowance, if any, can only be made in the judgment finally determining the proceeding (Domestic Relations Law, § 237, subd. [b]). The application of the petitioner for support of the child pending the proceeding should be determined at Special Term.

Hence, the order of Special Term should be modified, on the law and the facts, by (1) deleting so much of it as directs arbitration and stays this proceeding; (2) providing that the duration of the injunction therein against respondent's interfering with petitioner's custody of the child be changed so that it be for the pendency of this proceeding, instead of the pendency of arbitration; and (3) adding a provision that a hearing should promptly be held at Special Term to determine the issues of custody, counsel fee and support for the child, and that petitioner may apply at Special Term for an award for support of the child pending the proceeding. As so modified, the order should be affimed insofar as appealed from, with $10 costs and disbursements.

CHRIST, Acting P. J., BRENNAN, RABIN and MUNDER, JJ., concur.

Order modified, on the law and the facts, by (1) striking therefrom the second and third decretal paragraphs, which direct arbitration and stay this proceeding; (2) striking from the fourth decretal paragraph, which restrains respondent from interfering with petitioner's custody of the child and from removing the child from New York, the portion which applies said restraint until determination of arbitration, and providing instead that said restraint shall apply until determination of this proceeding; and (3) adding provisions that (a) a hearing shall promptly be held at Special Term to determine the issues of custody, counsel fee and support for the child and (b) petitioner may apply at Special Term for an award for support of the child pending this proceeding. As so modified, order affirmed insofar as appealed from, with $10 costs and disbursements.