OPINION OF THE COURT
Chief Judge Wachtler.
In these proceedings petitioner seeks to vacate and respondents seek to confirm an arbitration award rendered by a Beth Din, a religious tribunal that adjudicates disputes according to Jewish law and custom.* Supreme Court granted the petition *532 to vacate the award for several reasons enumerated in a lengthy opinion (Meisels v Uhr, 145 Misc 2d 571) and the Appellate Division affirmed for the reasons stated by Supreme Court (173 AD2d 542). We conclude that the award should be confirmed and therefore reverse.
For a number of years the parties engaged in business as a partnership which owned and operated three improved parcels of real property. After disagreements arose, they entered into negotiations for the dissolution of the partnership and allocation of the assets among the partners. According to petitioner, these negotiations culminated in an agreement that respondents would convey their interest and title in the three properties to petitioner in exchange for approximately $660,000, representing respondents’ equity interest in the properties less amounts owed to petitioner. According to respondents, however, this purported agreement was the result of duress and coercion, not negotiation. They claim that the agreement was signed by them only after they were subjected to physical abuse and economic blackmail during a late-night meeting in the office of petitioner’s former attorney.
The terms of this agreement were not carried out and the parties eventually agreed, in writing, to submit "all the disputes between them and as well on [the] three buildings” to arbitration by a Beth Din. The Beth Din panel was to consist of Rabbi Abraham Meisels (no relation to petitioner) and two other rabbis to be chosen by him. The agreement, which was written in Hebrew and signed on January 21, 1988, further provided that refusal to obey the Beth Din or resort to secular courts would result in forfeiture of any right in "these assets”, presumably meaning the assets of the partnership.
On February 22, 1988, at the first session of the Beth Din, the parties signed a second agreement, denominated a "Bill of Arbitration”, by which they accepted the authority of Rabbi Meisels and the two other members of the panel appointed by him, Rabbis Silber and Ginsberg. This agreement was also written in Hebrew. According to the translation submitted to Supreme Court, in a provision which that court found to be a significant limitation on the Beth Din’s authority, the parties undertook to fulfill the judgment to be granted by the Beth Din "either by judgment or by settlement according to Jewish law, as the said judges will see fit”. On the same day, the panel ordered petitioner to deposit $500,000 (later increased to $600,000) with the Beth Din, the purpose of which the parties *533 also dispute. Petitioner contends that the deposit was made only to insure his appearance before the Beth Din; respondents contend that it was also intended as security to be available to satisfy any judgment that might be rendered against petitioner by the panel. The deposit was finally made in a form acceptable to the Beth Din on June 9, 1988, after more than a dozen hearing sessions had taken place. At that time, the panel issued a written memorandum stating that it intended to issue a verdict within two weeks and that, if it failed to do so other than because of hindrance by petitioner, it would return petitioner’s deposit.
The final session was held on June 12. On June 23, a written award was issued which provided that petitioner would retain full ownership of the two remaining buildings (the third building had apparently been sold with the consent of all parties) and would pay to respondents the sum of $875,000, of which $600,000 was payable within two weeks and the remainder was payable in a three-month note. In addition, the award gave respondents the option to purchase one of the two buildings from petitioner within two months for a stated price.
On June 28, the Beth Din issued an appendix to the award, apparently at the request of both parties, which clarified certain aspects of the award. For example, the appendix provided that, with respect to the building subject to the option, petitioner would be entitled to the income and would be responsible for all normal expenses until the closing, but that any unusually large expenses that might be required before the closing would be passed on to respondents by adjusting the purchase price.
Also in the record is a document dated August 31, the source and nature of which is unclear. According to the translation from Hebrew, this document is a copy made by petitioner of a document shown to him by Rabbi Meisels. The translation indicates that the document was signed by all three members of the Beth Din panel. It sets forth a date and place for the exchange of releases and the payment of the sums due under the award, and notes that respondents will be accorded six weeks from that date to exercise the option. The document was never served upon the parties; according to the affidavits of two members of the Beth Din panel, it was an internal memorandum that merely reflected information imparted to the panel by the parties’ advocates concerning their plan to implement the award.
*534 On September 8, however, petitioner commenced a proceeding to vacate the award pursuant to CPLR 7511 and seeking the return of the $600,000 deposit. Among the grounds for vacatur asserted by petitioner were that Rabbis Ginsberg and Silber were selected at the insistence of respondents and that those two members of the panel were biased and engaged in improper ex parte contacts with respondents. In addition, petitioner claimed that the award was irrational, based in part on the Beth Din’s alleged failure to give due consideration to certain evidence offered by petitioner. These grounds for vacatur were all correctly rejected by Supreme Court, which noted that petitioner’s allegations of improper conduct on the part of the arbitrators were conclusory and unsubstantiated.
Petitioner’s primary contention was that the award should be vacated pursuant to CPLR 7511 (b) (1) (iv) on the ground that his rights were prejudiced by the failure of the Beth Din to follow certain procedures set forth in CPLR article 75, in particular the requirements of CPLR 7507 and 7509. This argument was also correctly rejected by Supreme Court.
CPLR 7507 requires, in part, that an arbitration award be in writing and be delivered to each party personally or by registered or certified mail unless the arbitration agreement provides for some other method of delivery. CPLR 7509 provides that an award may be modified by the arbitrator upon certain enumerated grounds and only upon an application by a party with written notice to the other parties.
Petitioner’s claim that the Beth Din did not comply with these procedures rests on a single fragile premise — that the Beth Din’s initial award was made on June 12, not June 23. According to petitioner, this supposed June 12 award directed that petitioner would retain title to both remaining properties and that respondents would receive the sum of $875,000. Thus, the argument goes, the June 23 award, which included the additional provision granting respondents an option to purchase one of the properties, constituted a modification of the original award. Because this modification did not satisfy the requirements of CPLR 7509 — there was no written application by respondents, no notice to petitioner and none of the enumerated grounds for modification — petitioner contends that the award must be vacated.
The weak link in this argument, of course, is the absence of any documentary evidence that the Beth Din in fact rendered *535 an award on June 12; if it did not, then the June 23 award was not a modification, the requirements of CPLR 7509 do not apply and the entire argument collapses. Petitioner’s explanation for his inability to produce the June 12 award is that he was never notified of the award and that it was never delivered to him as required by CPLR 7507. This procedural defect, petitioner contends, not only excuses his inability to substantiate the premise of his argument, but also establishes a further ground for vacating the award. We disagree.
Assuming for the sake of argument that there was some attempt to issue an award on June 12 — though Rabbis Silber and Ginsberg submitted affidavits denying that any decision had been reached on that date — petitioner’s contention that such an award was not delivered to him would, at most, vitiate that award. We must agree with the lower courts that either there was no attempt to issue an award on June 12 or, if there was, it was ineffective. In either case, the only viable award is the one dated June 23. This award, then, was not a modification of a prior award and petitioner’s arguments attacking it on that basis are without merit.
Petitioner also contended that the award was improperly modified by both the June 28 appendix to the award and the August 31 document which described a timetable for satisfaction of the award. Because these documents concern the terms of the option, the argument that they modified the award rests on the premise that the award in question is the so-called "missing award” of June 12, which did not include such an option. Our conclusion that there was no viable June 12 award largely disposes of this argument. The June 23 award is the relevant benchmark for determining whether the award was modified and, when compared with that award, the later documents did not work a modification, but at most merely clarified the terms of the option. Moreover, even assuming that a modification occurred and that the requirements of CPLR 7509 were not followed, vacatur is not required unless petitioner can demonstrate that he was prejudiced by the defect (see, CPLR 7511 [b] [1]). Petitioner has not met this burden. Indeed, the major provision of the June 28 appendix— an allowance for an upward adjustment in the option price to reflect unusual expenses — favored petitioner.
Finally, petitioner also claimed that vacatur of the award was required because "a final and definite award upon the subject matter submitted was not made” (CPLR 7511 [b] [1] *536 [in]). This claim is based upon provisions in the June 23 award, the June 28 appendix and the August 31 memorandum indicating that the Beth Din would resolve disputes that might arise between the parties concerning the execution of the award. For example, the June 28 appendix provided that the Beth Din would decide whether unusual operating expenses required an adjustment in the option price. Supreme Court’s decision to vacate the award was based in part on the conclusion that these provisions deprived the award of finality and definiteness. We reach a different conclusion.
The Beth Din’s reservation of jurisdiction to resolve disputes that might arise as the parties undertook to satisfy the award does not necessarily mean that the award is indefinite or nonfinal for purposes of CPLR 7511 (see, Morgan Guar. Trust Co. v Solow, 114 AD2d 818, affd 68 NY2d 779). An award is deficient in this regard and subject to vacatur only if it leaves the parties unable to determine their rights and obligations, if it does not resolve the controversy submitted or if it creates a new controversy (see, Hiscock v Harris, 74 NY 108, 113; Matter of Guetta [Raxon Fabrics Corp.], 123 AD2d 40, 44). The award in this case sufficiently set forth the parties’ rights and obligations with respect to the partnership assets and left no pending dispute unresolved. The Beth Din’s reservation of jurisdiction concerned only potential disputes that might arise, not because of any indefiniteness in the award, but because of the nature of the assets in issue or because of the parties’ intransigence. For example, there was no way for the panel to foresee at the time the award was made what expenses might arise in connection with the operation of the real property between the time of the award and closing if the respondents chose to exercise the option. And, given the history of the dispute and the behavior of the parties, it was reasonable for the panel to expect that the parties would not be able to agree between themselves whether any unusual expenses were necessary. In these circumstances, the Beth Din’s retention of jurisdiction to resolve these matters if they should arise did not render the award fatally indefinite or nonfinal.
The discussion to this point disposes of all of the arguments raised by petitioner as grounds for vacating the award. Supreme Court, however, did not confine itself to these issues, but ruled in addition that the arbitration agreements were invalid because they did not specifically identify the disputes that were being submitted and that the Beth Din had not *537 been granted the equivalent of equitable powers and therefore exceeded its authority in granting respondents an option to buy one of the properties. Because these grounds for vacatur had not been raised by petitioner, following Supreme Court’s decision respondents moved for reargument to answer these arguments.
Particularly at issue on the motion for reargument was whether the Bill of Arbitration had given the Beth Din authority to fashion an equitable compromise judgment. As noted earlier, the translation of this document submitted by respondents in opposition to the petition, when the question of the Beth Din’s equitable powers had not been raised, indicated that the Beth Din could resolve the dispute "either by judgment or by settlement according to Jewish law”.
Supreme Court, after reviewing general principles of Jewish law, had concluded that a Beth Din acquired equitable powers only by a grant of "peshara” authority — authority to reach a "compromise related to the law” as opposed to a judgment strictly according to law. Relying on the translation submitted by respondents, which referred to "settlement according to Jewish law”, the court held that the Beth Din lacked peshara authority in this case. In support of the motion for reargument, respondents submitted an affidavit from the translator noting that the Bill of Arbitration in fact used the word "peshara”. He asserted that he had chosen the word "settlement” rather than the literal translation "compromise nearest to the law” because it seemed less awkward, and that no distinction between the terms was intended.
Supreme Court granted reargument but adhered to its original determination, rejecting respondents’ attempt to clarify the translation, essentially on the ground that respondents had submitted the original translation and were therefore bound by it. The court referred to the respondents’ "hindsight attempt to substitute a different translation” as "tantamount to 'changing horses in mid-stream’ upon finding themselves 'hoisted by their own petard.’ ”
The court’s indignation was misplaced. Respondents’ need to clarify the record was no fault of their own; it was occasioned by the court’s decision to delve into issues not raised by either party. No one had raised any question about the Beth Din’s authority to reach a compromise and there was no need for respondents to be concerned about whether the translation reflected such authority until the court raised the issue sua sponte.
*538 We have no need to resolve whether the Beth Din had authority to render a compromise judgment. Whether or not the panel was specifically granted peshara authority, the arbitration agreements were broad enough to encompass disputes concerning title to the properties owned by the partnership — in fact, the first arbitration agreement specifically identified those buildings as subjects of the arbitration.
Supreme Court’s conclusion that, in the absence of peshara authority, the arbitrators could not grant an option to respondents rested on the premise that the arbitration was in the nature of an accounting, limited to resolving disputes arising under the agreement dissolving the partnership, and that the arbitrators could not change the terms of that agreement. The arbitration agreements, however, do not support such a limited view of the scope of the arbitration. They are broad enough to bring within the purview of the arbitration respondents’ claim that the dissolution agreement was unenforceable because it was the product of duress and coercion and that, therefore, the partnership assets should be distributed in some other manner.
We also disagree with Supreme Court’s conclusion that the arbitration agreements were impermissibly vague. We note first that this issue, too, was raised by the court sua sponte. Petitioner did not challenge the validity of the arbitration agreements, and for good reason. CPLR 7511 (b) (2) (ii) recognizes such a challenge as grounds for vacatur only by one "who neither participated in the arbitration nor was served with a notice of intention to arbitrate”. Petitioner participated in the arbitration, however, thus waiving any claim that the agreement to arbitrate was invalid (Matter of Silverman [Benmor Coats], 61 NY2d 299, 307). For this reason alone, vacatur of the award cannot be justified on the basis of a supposed deficiency in the arbitration agreements.
Nevertheless, because the decision of the lower courts in this case casts doubt on the validity of broad arbitration agreements in general, and these particular agreements, which apparently are widely used in Beth Din arbitrations, we consider it appropriate to reaffirm that broad arbitration agreements are permissible. We have never required that arbitration agreements identify with specificity those disputes which are being submitted. As we noted in Matter of Weinrott (Carp) (32 NY2d 190, 196), "[s]uch a demand for specificity as to which particular issues should be submitted to the arbitra *539 tors would make the drafting of arbitration agreements burdensome, confusing and often impossible.”
The final point concerns the provisions of the arbitration agreements under which any rights in the partnership assets would be forfeited as a penalty for resorting to civil courts. Supreme Court held that these provisions violated public policy and were therefore void and unenforceable. Petitioner contends that these provisions taint the arbitration agreements to such a degree that the agreements are void in their entirety. We find it unnecessary to pass on the validity of the forfeiture provisions, inasmuch as this record reflects no attempt by the Beth Din to enforce them. Whether or not the forfeiture provisions are enforceable, however, the remaining portions of the agreements are nonetheless valid.
Accordingly, the order of the Appellate Division should be reversed, with costs, the petition in proceeding No. 1 to vacate the arbitration award denied, and the petition in proceeding No. 2 to confirm the arbitration award granted.
Judges Titone, Hancock, Jr., Bellacosa and Yesawich, Jr.,* concur; Judges Simons and Kaye taking no part.
Order reversed, etc.

 Proceeding No. 1 was commenced by petitioner Meisels to vacate the award. In that proceeding, respondents Alexander and Moses Uhr asserted a counterclaim for an order confirming the award. In addition, as a protective measure, since petitioner Meisels contended that the counterclaim was not properly asserted, the Uhrs commenced proceeding No. 2 also seeking to confirm the award. In this second proceeding, the Uhrs are petitioners and Meisels is the respondent. For ease of reference, however, this opinion will refer to the parties according to the caption in the first proceeding — i.e., Meisels is the petitioner and the Uhrs are the respondents.

 Designated pursuant to NY Constitution, article VI, § 2.