[600 NYS2d 740]

Miriam (Ungar) Glauber, Appellant, v Baruch Glauber, Respondent.

Second Department, July 26, 1993

APPEARANCES OF COUNSEL

*Sharyn M. Witlin,* Brooklyn, for appellant.

*Mazur Bocketti & Mazur,* New York City *(Wayne J. Mazur* and *Irene J. Zubli* of counsel), for respondent.

### OPINION OF THE COURT

COPERTINO, J.

On this appeal, we revisit the question of whether agreements to arbitrate the custody of minor children should be enforced by New York State courts. We hold that they should not be enforced.

The salient facts of this case may be summarized briefly. The plaintiff Miriam (Ungar) Glauber and the defendant Baruch Glauber were divorced by judgment of the Supreme Court, Kings County, dated May 15, 1985. The stipulation signed April 1, 1985, survived the judgment, and the court retained jurisdiction for purposes of enforcing the provisions contained therein "to the extent permitted by law". The stipulation provided, among other things, for child support, visitation, and custody of the parties' minor son, Zishe, born November 29, 1983. The stipulation also provided for resolution of disputes as follows: "If there arises any difference of opinion between the parties as to the terms of this agreement, the interpretation of these terms, or other matters which form the subject matter of this stipulation, this disagreement shall not be brought before any Civil Court but shall be brought before [a named Rabbi] for decision. His decision as to the matter shall be final. If for some reason he cannot decide the matter then the matter shall be brought before [a named Rabbi]. If he also, for some reason, cannot decide the matter, then each party shall pick a dayan in accordance with Jewish law. The two dayans shall pick a third dayan and these three dayans (dayan in Hebrew means Judge) shall decide the matter and their decision shall be final".

Under the terms of the stipulation the plaintiff was to have custody until Zishe reached the "age of education," defined as no later than six years old. Custody was then to revert to the defendant. A few days after Zishe's sixth birthday, the defendant wrote to the plaintiff and made a custody demand. Because she believed that her son's well-being would be jeopardized if she acceded to the demand, the plaintiff refused. She ultimately sought the aid of the Supreme Court, moving *inter alia,* for permanent custody. The defendant cross-moved for arbitration pursuant to CPLR article 75, pursuant to the arbitration clause. The court granted the cross motion and

directed the parties to proceed to arbitration. Temporary custody remained with plaintiff.

Arbitration clauses are commonly found in separation agreements and can serve useful purposes. The arbitration process can be less formal, expedient, and less costly than litigation, and can even provide the parties an opportunity to have their dispute heard by a person or persons they believe to be especially well qualified *(see, Bowmer v Bowmer,* 50 NY2d 288, 293). We find that, absent a threshold infirmity, the broad arbitration clause contained in the agreement would subject custody to arbitration *(see, Matter of Silverman [Benmor Coats],* 61 NY2d 299). Consequently, the order appealed from should be affirmed unless strong public policy dictates that custody determinations should not be left to an arbitrator.

There is little doubt that as courts have become more and more congested there has been a concomitant rise in resort to arbitration. Over the last 25 years it has become a preferred method for the settlement of many controversies *(see, Sablosky v Gordon Co.,* 73 NY2d 133, 138). Relatedly, the case law which has emerged during this period has made arbitration awards difficult to overturn; the arbitral process has been, in large measure, insulated from judicial review. "[O]nce it is clear that a valid agreement to arbitrate has been made and complied with and that the claim sought to be arbitrated is not barred by limitations, the authority of the arbitrator is plenary * * * [and the arbitrator] may do justice as [the arbitrator] sees it" *(Matter of Silverman [Benmor Coats], supra,* at 307-308). An award thus will not be invalidated unless it is totally irrational, violates strong public policy, or exceeds a specific limitation on the arbitrator's power *(see, Matter of Silverman [Benmor Coats], supra,* at 307, 308).

Given the lack of a presumption in favor of either parent embodied in the Domestic Relations Law, the loser in a custody dispute would be hard pressed to prove the award "totally irrational" or that granting custody to the victor violates strong public policy *(see,* Domestic Relations Law §§ 70, 240). As far as limitations on the arbitrator's power are concerned, arbitration clauses are now read expansively. Indeed, in setting forth the rule that broad arbitration clauses grant the arbitrator the power to reach all the substantive issues covered by an agreement unless a specific exception is provided in the arbitration clause itself, the *Silverman* Court specifically overruled conflicting earlier precedents *(see, Matter*

*of Silverman [Benmor Coats], supra,* at 308, n). We have thus observed that there are now few limitations on the powers of an arbitrator *(see, Hendler & Murray v Lambert,* 147 AD2d 444, 447). It bears noting that the breadth of an arbitration clause does not contract because the arbitrator happens to be a religious figure or body *(see, Matter of Meisels v Uhr,* 79 NY2d 526, 538; *Matter of Gutman v Friedman,* 170 AD2d 606; *Kingsbridge Ctr. v Turk,* 98 AD2d 664).

In view of the foregoing, it has become increasingly important to identify at the threshold those subjects which should not be arbitrated—those exceptions which have been recognized "as so interlaced with strong public policy considerations that they have been placed beyond the reach of the arbitrators' discretion" *(Matter of Associated Teachers v Board of Educ.,* 33 NY2d 229, 235). Among them, and by way of example, are the right to inspect teacher personnel files *(see, Board of Educ. v Areman,* 41 NY2d 527), enforcement of State antitrust laws *(see, Matter of Aimcee Wholesale Corp. [Tomar Prods.],* 21 NY2d 621), disqualification of an attorney from representing a particular party *(see, Bidermann Indus. Licensing v Avmar N.V.,* 173 AD2d 401), and usury claims asserted by borrowers *(see, Durst v Abrash,* 22 AD2d 39, *affd* 17 NY2d 445). We conclude that custody of and visitation with children must be added to this list because this subject, "on its face", is inappropriate for resolution by arbitration *(Matter of Sprinzen [Nomberg],* 46 NY2d 623, 631).

It is already well established by both statute and case law that contracts entered into by the parents with regard to the fate of their children are not binding on the courts. Domestic Relations Law §§ 70 and 240 impose the responsibility upon the courts to make custody and visitation orders based upon the best interests of the child. Notwithstanding that custody agreements between parents are, in the usual case, to be given priority *(see, Matter of Nehra v Uhlar,* 43 NY2d 242, 251), the responsibility of the courts always supersedes whatever bargain has been struck. The court must always make its own independent review and findings, and may award custody to one parent in the face of an agreement granting custody to the other if the best interests of the child requires it *(see, Eschbach v Eschbach,* 56 NY2d 167; *Friederwitzer v Friederwitzer,* 55 NY2d 89). The best interests standard will be applied to modifications as well as to the original custody determinations at all stages of judicial proceedings *(see, Friederwitzer v Friederwitzer, supra).* A court cannot be bound by

an agreement as to custody and visitation, or either custody or visitation, and simultaneously act as *parens patriae* on behalf of the child *(see, Finlay v Finlay,* 240 NY 429, 433-434).

Enforcing arbitration provisions such as those at bar would be contrary to the foregoing authority because an agreement to arbitrate the issue of custody is indistinguishable from an agreement to give custody *(Agur v Agur,* 32 AD2d 16). We recognize that arbitration of custody and visitation disputes has been referred to with approval elsewhere, at least in dicta *(see, Sheets v Sheets,* 22 AD2d 176, 177). In *Sheets* the Appellate Division, First Department, recommended a two-stage procedure in which an arbitration award concerning custody and visitation would first be made and then reviewed by the court under best interests analysis. We have expressly disagreed with this approach *(see, Nestel v Nestel,* 38 AD2d 942, 943; *Agur v Agur, supra,* at 21), and it is now a matter of some doubt that *Sheets* would be followed by the Appellate Division, First Department *(see, Harris v Iannaccone,* 107 AD2d 429, 431, *affd* 66 NY2d 728, citing *Nestel* for the proposition that child custody is an area found to be nonarbitrable). We strongly reaffirm our disapproval of arbitration in this area. "Of necessity, the second stage of the suggested course of action takes precedence over the first—to such an extent that duplication of time, expense and effort seems inevitable. Nor does it seem advantageous to the best interests of the child that the question of custody be postponed while a rehearsal of the decisive inquiry is held" *(Agur v Agur, supra,* at 21). Indeed, in view of the present state of the law, which makes arbitration awards even more difficult to set aside, best interests analysis and arbitration are more incompatible now than when *Sheets, Agur,* and *Nestel* were decided. If an issue is to be arbitrated, the expectation is that an award will not be disturbed *(see, Matter of Silverman [Benmor Coats],* 61 NY2d 299, *supra).* Nevertheless, if custody and visitation are in issue, the court's role as *parens partriae* must not be usurped *(see, Finlay v Finlay, supra).* The court's traditional power to protect the interests of children cannot yield to the expectation of finality of arbitration awards.

Although the arbitration sought in this case was to be held before a religious tribunal, we emphasize that the policy we reassert here is a neutral one. As indicated previously an issue found to be appropriate for arbitration may be arbitrated before a religious forum *(see, Matter of Meisels v Uhr,* 79 NY2d 526, *supra).* Such a forum may properly address

certain issues arising under a separation agreement, for example child support and spousal maintenance *(see, Nestel v Nestel, supra; Lieberman v Lieberman,* 149 Misc 2d 983).* However, when circumstances require determining which living arrangements are in the best interests of children, the courts alone must undertake the task. Accordingly, we hold that the issues of custody and visitation must be put before the court for determination and may not be submitted to arbitration.

In the absence of a fully developed record we will not, as the appellant requests, make our own findings and award custody to her.

Accordingly, the order is reversed insofar as appealed from, on the law, without costs or disbursements, that branch of the defendant's cross motion which was to compel arbitration of the issue of custody is denied, and the matter is remitted to the Supreme Court, Kings County, for a determination by the court of the issues of custody and visitation.

THOMPSON, J. P., EIBER and PIZZUTO, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, without costs or disbursements, that branch of the defendant's cross motion which was to compel arbitration of the issue of custody is denied, and the matter is remitted to the Supreme Court, Kings County, for a determination by the court of the issues of custody and visitation.

---

* We note that visitation and custody are often so inextricably intertwined that they must be considered one and the same for purposes of determining whether arbitration is appropriate. The suggestion that visitation alone might be a fit subject for arbitration was made in *Agur v Agur* (32 AD2d 16, *supra),* but this was later disapproved in *Nestel v Nestel* (38 AD2d 942, *supra).*