[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 223.]

KELM, APPELLANT, *v.* KELM, APPELLEE.

[Cite as *Kelm v. Kelm*, 2001-Ohio-168.]

*Domestic relations—Arbitration—Child custody and parental visitation are not subject to arbitration in a domestic relations case.*

(No. 00-1168—Submitted March 27, 2001—Decided July 5, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 99AP-747.

————————

SYLLABUS OF THE COURT

In a domestic relations case, matters of child custody and parental visitation are not subject to arbitration.

————————

FRANCIS E. SWEENEY, SR., J.

{¶ 1} On October 1, 1993, the Franklin County Court of Common Pleas, Division of Domestic Relations, granted appellant, Russell A. Kelm, and appellee, Amy K. Kelm, a judgment of divorce. The judgment incorporated the parties' shared parenting plan, which provided, *inter alia*, that any future disputes between the parties regarding child custody or visitation would be submitted to arbitration.

{¶ 2} On May 10, 1999, appellee filed in the domestic relations court a motion to modify or terminate the shared parenting plan. Appellant responded by filing a motion to stay proceedings on appellee's motion and to compel arbitration pursuant to the shared parenting plan. On June 25, 1999, the trial court issued a judgment entry overruling appellant's motion. The trial court concluded that, under Ohio law, matters relating to child custody are not subject to arbitration.

{¶ 3} Appellant appealed the trial court's decision to the Tenth District Court of Appeals, arguing that the trial court erred in failing to enforce the arbitration agreement. The court of appeals rejected this assignment of error and

affirmed the judgment of the trial court, holding that the use of arbitration to resolve child custody or visitation disputes conflicts with the duty of the domestic relations courts to protect the best interests of children. The court of appeals further held that appellee has not, by virtue of her being a party to the shared parenting plan, waived her right to challenge the arbitration clause. The court of appeals also concluded that appellee's challenge is not barred under the doctrine of *res judicata*.

{¶ 4} The cause is now before this court pursuant to the allowance of a discretionary appeal.

{¶ 5} We are asked to decide whether, in a domestic relations case, matters relating to child custody and visitation may be resolved through arbitration. For the reasons that follow, we hold that these matters cannot be resolved through arbitration. Only the courts are empowered to resolve disputes relating to child custody and visitation.

{¶ 6} The parties' divorce has a long and convoluted history. It has already produced one decision from this court, *Kelm v. Kelm* (1993), 68 Ohio St.3d 26, 623 N.E.2d 39 ("*Kelm I*"). In *Kelm I*, we were asked to decide whether an arbitration clause in the parties' antenuptial agreement was enforceable as to matters relating to spousal and child support. We held that these support matters could be made subject to an agreement to arbitrate. *Id*. at paragraph one of the syllabus. In so holding, we recognized that, under the doctrine of *parens patriae*,[1] courts are entrusted to protect the best interests of children. *Id*. at 30, 623 N.E.2d at 42. We concluded, however, that permitting parents to arbitrate child support does not interfere with the judicial protection of the best interests of children. In short, we saw "no valid reason why the arbitration process should not be available in the area of child support; the advantages of arbitration in domestic disputes outweigh any

---

1. *Parens patriae* means, literally, "parent of his or her country," and refers to the role of the state as sovereign and guardian of persons under legal disability. Black's Law Dictionary (7 Ed.1999) 1137.

disadvantages." *Id*. Appellant urges us to extend our holding in *Kelm I* to allow matters of child custody and visitation to be resolved through arbitration. We decline to do so.

**{¶ 7}** While we recognize the important impact that monetary support can have upon a child's life, we believe that custody and visitation have a much greater impact upon the child in terms of both the child's daily life and his or her long-term development. Custody and visitation have the potential to affect countless aspects of a child's life, including the child's relationships with his or her parents, the child's relationships with extended family, the child's social and cultural upbringing, and even, in some unfortunate cases, the child's physical and emotional security. More than support determinations, " 'determinations of custody go to the very core of the child's welfare and best interests.' " *Pulfer v. Pulfer* (1996), 110 Ohio App.3d 90, 94, 673 N.E.2d 656, 658, quoting *Masters v. Masters* (1986), 201 Conn. 50, 67, 513 A.2d 104, 113. "[T]he process of arbitration, useful when the mundane matter of the amount of support is in issue, is less so when the delicate balancing of the factors composing the best interests of a child is at issue." *Nestel v. Nestel* (1972), 38 A.D.2d 942, 943, 331 N.Y.S.2d 241, 243. For this reason, we are less inclined than we were in *Kelm I* to permit arbitration to encroach upon the trial court's traditional role as *parens patriae*.

**{¶ 8}** As appellant points out, there are decisions from a number of jurisdictions upholding the use of arbitration to settle disputes over child custody and visitation. See, *e.g.*, *Dick v. Dick* (1995), 210 Mich.App. 576, 534 N.W.2d 185; *Kovacs v. Kovacs* (1993), 98 Md.App. 289, 633 A.2d 425; *Miller v. Miller* (1993), 423 Pa.Super. 162, 620 A.2d 1161; *Crutchley v. Crutchley* (1982), 306 N.C. 518, 293 S.E.2d 793. Typically, these decisions protect the courts' role as *parens patriae* by making the arbitrator's decision subject to *de novo* review and modification by the courts. See *id*. at 524, 293 S.E.2d at 797; *Kovacs*, 98 Md.App. at 299-302, 633 A.2d at 431-432; *Miller*, 423 Pa.Super. at 169-170, 620 A.2d at 1165; but, see,

*Dick*, 210 Mich.App. at 588-589, 534 N.W.2d at 191 (permitting only limited review by the courts). While this approach preserves the court's role as *parens patriae*, we believe that, ultimately, it advances neither the children's best interests nor the basic goals underlying arbitration.

{¶ 9} A two-stage procedure consisting of an arbitrator's decision followed by *de novo* judicial review "is certain to be wasteful of time and expense and result in a duplication of effort." *Nestel*, 38 A.D.2d at 943, 331 N.Y.S.2d at 243. Clearly, it does not seem advantageous to the best interests of children that questions of custody be postponed " 'while a rehearsal of the decisive inquiry is held.' " *Glauber v. Glauber* (1993), 192 A.D.2d 94, 98, 600 N.Y.S.2d 740, 743, quoting *Agur v. Agur* (1969), 32 A.D.2d 16, 21, 298 N.Y.S.2d 772, 778.

{¶ 10} The protracted two-stage process adopted by some courts also frustrates the very goals underlying arbitration. " 'Arbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute * * * [and] " * * * has the additional advantage of unburdening crowded court dockets." ' " *Kelm I*, 68 Ohio St.3d at 29, 623 N.E.2d at 41, quoting *Schaefer v. Allstate Ins. Co.* (1992), 63 Ohio St.3d 708, 712, 590 N.E.2d 1242, 1245. A two-stage process consisting of both arbitration and judicial review achieves none of these goals.

{¶ 11} Furthermore, "[i]f an issue is to be arbitrated, the expectation [of the parties] is that an award will not be disturbed." *Glauber*, 192 A.D.2d at 98, 600 N.Y.S.2d at 743. *De novo* review destroys this expectation. Thus, there is an inevitable tension between the court's traditional responsibility to protect the best interests of children and the parties' expectation that an arbitration award will be final.

{¶ 12} Appellant argues that because the shared parenting plan contained an agreement to arbitrate any future custody and visitation disputes, and because this agreement was, by consent of both parties, incorporated into the trial court's

judgment of divorce, appellee could not subsequently challenge the arbitration agreement. Essentially, appellant argues that by agreeing to arbitrate custody and visitation matters, appellee has waived her right to challenge the agreement. We disagree.

{¶ 13} The law permits parties to voluntarily waive a number of important legal rights, *Sanitary Commercial Services, Inc. v. Shank* (1991), 57 Ohio St.3d 178, 180-181, 566 N.E.2d 1215, 1218, and in the interest of finality, courts are usually quite reluctant to relieve parties of the consequences of these choices. See, *e.g.*, *Knapp v. Knapp* (1986), 24 Ohio St.3d 141, 24 OBR 362, 493 N.E.2d 1353 (holding that a couple who had obtained a dissolution of their marriage waived their right to challenge the alimony provisions in their separation agreement, which had been incorporated into the trial court's dissolution decree). However, a waiver of rights will be recognized only when the waiver does not violate public policy. *Shank*, 57 Ohio St.3d at 180, 566 N.E.2d at 1218. A fundamental flaw in appellant's argument is its assumption that arbitration of custody and visitation matters does not violate public policy. We have already concluded, for the reasons set forth above, that it does.

{¶ 14} To hold that appellee has waived her right to challenge the arbitration agreement and to permit arbitration of the parties' child custody and visitation disputes would prevent the trial court from fulfilling its role as *parens patriae*. Because this is contrary to public policy, we conclude that appellee has not, by virtue of her acquiescence to the original shared parenting plan, waived her right to challenge that plan's provision for arbitration of custody and visitation matters.

{¶ 15} There is an even more fundamental flaw in appellant's waiver analysis. With respect to matters of custody and visitation, the central focus is not, as appellant suggests, the rights of the parents but is, rather, the best interests of the

children. See R.C. 3109.04(B)(1).[2] The duty owed by the courts to children under the doctrine of *parens patriae* cannot be severed by agreement of the parties. It stands to reason that "[i]f parents cannot bind the court by an agreement affecting the interests of their children, they cannot bind the court by agreeing to let someone else, an arbitrator, make such a decision for them." *Kovacs*, 98 Md.App. at 300, 633 A.2d at 431. "As the representative of the State, the [court's] responsibility to ensure the best interests of the children supersedes that of the parents." *Id*. at 301, 633 A.2d at 431.

{¶ 16} Finally, appellant argues that because appellee could have mounted a challenge to the arbitration clause in a previous action, she is now barred from bringing this challenge under the doctrine of *res judicata*. This argument, too, lacks merit.

{¶ 17} Under the doctrine of *res judicata*, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp*. (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, syllabus. *Res judicata* operates to bar litigation of " 'all claims which were or might have been litigated in a first lawsuit.' " (Emphasis omitted.) *Id*. at 382, 653 N.E.2d at 229, quoting *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178, 1180.

{¶ 18} It is true that any question as to the enforceability of the arbitration clause could have been litigated in the first divorce action, before the shared parenting plan was even adopted by the trial court. Nevertheless, we find that it would be inappropriate to invoke *res judicata* in this case.

---

2. R.C. 3109.04(B)(1) provides:

"When making the allocation of the parental rights and responsibilities for the care of the children * * * in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children."

{¶ 19} In many states, including Ohio, an allocation of custody and visitation rights remains subject to future modification by the trial court. For this reason, a number of courts have held that the doctrine of *res judicata* should not be applied strictly in cases involving child custody and visitation. See, *e.g.*, *Childers v. Childers* (Miss.1998), 717 So.2d 1279, 1282; *Lipscomb v. Lipscomb* (Ala.1994), 660 So.2d 986, 989; *People ex rel. Farina v. Sensor* (1998), 299 Ill.App.3d 333, 336, 233 Ill.Dec. 873, 875, 701 N.E.2d 1147, 1149. We find these decisions persuasive.

{¶ 20} In Ohio, the authority of the domestic relations courts to modify their own custody and visitation orders is found in R.C. 3109.04. For example, R.C. 3109.04(E)(1)(a) allows modification when "a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and * * * modification is necessary to serve the best interest of the child." Thus, as a practical matter, a custody and visitation order is never absolutely final. This fact makes application of *res judicata* impractical. The very purpose of *res judicata* is to deter the repeated litigation of resolved issues, thereby ensuring finality in judgments and the conservation of judicial resources. *Grava*, 73 Ohio St.3d at 383-384, 653 N.E.2d at 230. However, in the area of custody and visitation, we sacrifice finality and some of our limited judicial resources in order to secure a higher value—the best interests of children.

{¶ 21} Hence, appellee's failure to challenge the arbitration clause in the previous divorce action could not deprive the trial court of jurisdiction to consider appellee's subsequent motion to modify or terminate the shared parenting plan. The trial court has a continuing responsibility under R.C. 3109.04(B)(1) and (E)(1)(a) to protect the best interests of the children. As we have already held, the parties' agreement to arbitrate custody and visitation disputes impermissibly interferes with the court's ability to carry out this responsibility. The doctrine of *res judicata*, like

the doctrine of waiver, cannot be relied upon to enforce this otherwise unenforceable agreement.

{¶ 22} For the foregoing reasons, we hold that in a domestic relations case, matters of child custody and parental visitation are not subject to arbitration. The authority to resolve disputes over custody and visitation rests exclusively with the courts. Any agreement to the contrary is void and unenforceable.

*Judgment affirmed.*

RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., concurs separately.

COOK, J., concurs in syllabus and judgment.

DOUGLAS, J., concurs in judgment.

_____

**MOYER, C.J., concurring.**

{¶ 23} I concur in the majority decision with the observation that it is confined to arbitration and does not apply to agreements reached regarding visitation and custody through the process of mediation.

_____

*Law Offices of Russell A. Kelm* and *Russell A. Kelm*, for appellant.

*Blaugrund*, *Herbert & Martin*, *Inc.* and *Steven E. Hillman*, for appellee.

_____