JOURNAL ENTRY AND OPINION.
{¶ 1} Plaintiff-appellant Halle Rex ("Rex") appeals and defendant-appellee Richard Conner ("Conner") cross-appeals the decision of the Cuyahoga County Court of Common Pleas Domestic Relations Division following a trial in connection with Rex's Motion to Modify Parental Rights and Responsibilities, Motion to Modify Child Support, Motion to Terminate Order on Income Source, Motion to Show Cause, Motion to Strike; Conner's Motion for Attorney Fees, Motion for Sanctions, Motion to Vacate Order, Motion to Show Cause, Motion for In Camera Interview; and the Guardian Ad Litem's Motion for Fees. Consolidated with this case is Rex's appeal, in case number 81810, from the decision of the same court to deny her motion for a new trial following the court's rulings on the various motions listed above. Finding no error in the proceedings below, we affirm both decisions. However, for the reasons discussed herein, we remand this case to the trial court for further proceedings.
 {¶ 2} The following facts give rise to this appeal.
 {¶ 3} Rex and Conner were married in 1985. They were divorced in 1996. Three children were born to them during their marriage. At the time of the divorce, the parties agreed to a shared parenting plan that was incorporated into the Judgment Entry of Divorce. The Judgment Entry of Divorce also ordered the appointment of an arbitrator to be selected jointly by a representative of each party. Dr. Sandra McPherson was selected. Her duty was to recommend to the court a permanent plan for allocation of parental rights and responsibilities, possession schedule, and choice of school.
 {¶ 4} McPherson issued her final report on July 31, 1996. She recommended that Rex be awarded primary custody of the parties' oldest child while Conner be awarded custody of the parties' middle and youngest child. No journal entry was ever issued in connection with the arbitrator's recommendation; however, since September of 1996, the parties followed the recommendation voluntarily.
 {¶ 5} Immediately after the parties began following the arbitrator's recommendation, Rex became concerned about the effect on their children from living in separate households. Rex noticed her middle and youngest child becoming alienated from her.
 {¶ 6} In November of 1997, Rex filed a Motion to Modify Parental Rights and Responsibilities. In 1998, while Rex's motion was pending, Dr. Michael B. Leach met with the children and the parties. Leach's findings and recommendations were contained in an expert report which was submitted to the court as part of the later trial in this matter that is the subject of this appeal. The parties' middle and youngest children were also treated by Dr. Ammon Shai, a psychologist, for nearly three years. In 1999, the court appointed Dr. Abdon Villalba to evaluate the parties and their children. Villalba's expert report was also submitted to the court as part of the later trial in this matter.
 {¶ 7} Rex's motion to modify was not heard by a magistrate until May 31, 2000. After hearing all the testimony from both parties and reviewing the expert reports, the magistrate issued a recommendation on March 5, 2001 that the trial court deny Rex's motion to modify. The trial court issued its decision on March 20, 2002 adopting the recommendation of the magistrate with minor changes that are not the subject of the two appeals and one cross-appeal.
 {¶ 8} Rex appealed the trial court's decision in case number 81210 listing five assignments of error. Rex also filed a motion for new trial. The trial court denied that motion. Rex then appealed from the denial of her motion for new trial in case number 81810 listing one assignment of error. As both case numbers 81210 and 81810 contain duplicative factual and legal issues, they were consolidated for purposes of appeal.
 {¶ 9} In total, Rex advances six assignments of error and Conner advances three assignments of error for our review. Rex's first assignment of error is as follows:
 {¶ 10} "I. The Trial Court Erred By Denying the Plaintiff-Appellant's Motion to Modify Parental Rights and Responsibilities."
 {¶ 11} Rex filed a motion to modify the allocation of parental rights and responsibilities seeking to have all three children reside together with her. The trial court denied Rex's motion.
 {¶ 12} Rex argues that the trial court operated under the mistaken belief that the arbitrator's recommendation had in fact been adopted by the trial court and incorporated into a journal entry and was the prior order that Rex was seeking to modify. The trial court repeatedly noted the opposite of Rex's contention as highlighted by this passage from its opinion: "If there is one aspect of this case that all parties agree on it is that the arbitrator's decision was never presented to the Court for the Court to order the recommendations of the arbitrator to take effect."
 {¶ 13} The parties voluntarily adopted the arbitrator's recommendation and followed that schedule starting in September of 1996. Therefore, the trial court correctly used the parties' existing schedule as the backdrop from which to determine whether a modification was in the best interests of the parties' children.
 {¶ 14} Rex also argues the trial court failed to consider all the relevant factors under R.C. 3109.04, regarding the best interests of the children, in rendering its decision.
 {¶ 15} In determining the best interests of the children, the trial court is guided by R.C. 3109.04(F)(1) which reads:
"In determining the best interest of a child pursuant to this section* * * the court shall consider all relevant factors, including, but notlimited to:
 "(a) The wishes of the child's parents regarding the child's care;
 "(b) If the court has interviewed the child in chambers pursuant todivision (B) of this section regarding the child's wishes and concerns asto the allocation of parental rights and responsibilities concerning thechild, the wishes and concerns of the child, as expressed to the court;
 "(c) The child's interaction and interrelationship with the child'sparents, siblings, and any other person who may significantly affect thechild's best interest;
 "(d) The child's adjustment to the child's home, school, and community;
 "(e) The mental and physical health of all persons involved in thesituation;
 "(f) The parent more likely to honor and facilitate court-approvedparenting time rights or visitation and companionship rights;
 "(g) Whether either parent has failed to make all child supportpayments, including all arrearages, that are required of that parentpursuant to a child support order under which that parent is an obligor;
 "(h) Whether either parent previously has been convicted of or pleadedguilty to any criminal offense involving any act that resulted in a childbeing an abused child or a neglected child; whether either parent, in acase in which a child has been adjudicated an abused child or a neglectedchild, previously has been determined to be the perpetrator of theabusive or neglectful act that is the basis of an adjudication; whethereither parent previously has been convicted of or pleaded guilty to aviolation of section 2919.25 of the Revised Code involving a victim whoat the time of the commission of the offense was a member of the familyor household that is the subject of the current proceeding; whethereither parent previously has been convicted of or pleaded guilty to anyoffense involving a victim who at the time of the commission of theoffense was a member of the family or household that is the subject ofthe current proceeding and caused physical harm to the victim in thecommission of the offense; and whether there is reason to believe thateither parent has acted in a manner resulting in a child being an abusedchild or a neglected child;
 "(i) Whether the residential parent or one of the parents subject to ashared parenting decree has continuously and willfully denied the otherparent's right to parenting time in accordance with an order of thecourt;
 "(j) Whether either parent has established a residence, or is planningto establish a residence, outside this state."
 {¶ 16} Reviewing the trial court's order demonstrates that it considered all relevant factors of R.C. 3109.04.
 {¶ 17} For example, as to R.C. 3109.04(F)(1)(a), the court found "that [Rex] is requesting that the current schedule of possession * * * be modified. She wants the [two younger children] who are currently residing with [Conner] to be place[d] primarily in her care. * * * [Conner] does not want the current residences of the three minor children to be changed." As to R.C. 3109.04(F)(1)(c), the court found "that [Rex] spends very little one on one (sic) time with [the two younger children]. * * * [T]he Conner children * * * all seem to interact well together. * * * [Conner] appears to take a greater interest in the children's academics. * * * [Rex and Conner each] have a very different parenting style." As to R.C. 3109.04(F)(1)(d), the court found "[the parties' oldest child] missed approximately 39 days of school last year [and] * * * receives A's and B's in school." As to R.C. 3109.04(F)(1)(e), the court found "that Plaintiff suffers from depression. She is currently taking Zoloft for her depression. * * * [N]o evidence was presented regarding [Conner's] suffering from any mental or physical health problems."
 {¶ 18} Finally, "there is no requirement that a trial court separately address and list each factor contained in R.C. 3109.04 * * *."In Re: Erin Petrella (May 8, 1997), Cuyahoga App. No. 70914. We cannot say the trial court failed to properly consider all the relevant factors under R.C. 3109.04 in rendering its decision.
 {¶ 19} "A trial court's decision modifying an allocation of parental rights and responsibilities is reviewed with the utmost deference. A reviewing court, therefore, will not reverse a trial court's finding of a change of circumstances absent an abuse of discretion. When applying an abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures and attitude. This is especially true in a child custody case since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record." In Re: L.S., Jr. 152 Ohio App.3d 500,2003-Ohio-2045.
 {¶ 20} The trial court here made several adjustments to the shared parenting plan "in order for the children to spend more time with the parent with whom they do not reside." The trial court expanded weekend visitation and encouraged the parents to use the midweek visitation as one-on-one time with their child(ren) and not to include other family and friends.
 {¶ 21} The trial court did not, however, grant Rex's main request that all three children reside together with her. Rex argues the trial court "ignored the current relevant information presented regarding the minor children." We disagree.
 {¶ 22} Throughout the trial court's 20-page order, it made numerous references to the current information it was provided regarding the children including: "The Plaintiff testified that the boys are moodier and that they are less affectionate towards her * * *."
 {¶ 23} "* * * [W]ith respect to the behavioral problems * * * it does not appear that those problems were discussed with [Conner] to a great extent if at all." "The [trial court] finds that the * * * children * * * all seem to interact well together." "The [trial court] finds that [the parties' oldest child] receives A's and B's in school." "The [trial court] finds that there was some question as to whether or not [the parties' middle child] had a learning disability." We cannot say the court abused its discretion and ignored current relevant information about the welfare of the parties' children in making its decision to deny Rex's motion to modify. Rex's first assignment of error is overruled.
 {¶ 24} Rex's second assignment of error is as follows:
 {¶ 25} "II. The Trial Court Erred as a Matter of Law in Relying on the Recommendations of an Arbitrator to Determine Parental Rights and Responsibilities."
 {¶ 26} Rex argues that the trial court improperly relied upon an arbitrator's recommendation as to the allocation of parental rights and responsibilities in direct contravention of the Ohio Supreme Court decision in Kelm v. Kelm (2001), 92 Ohio St.3d 223. At the conclusion of the section of the trial court's opinion on the allocation of parental rights and responsibilities, it stated the following: "The Court hereby adopts the decisions of the arbitrator * * *."
 {¶ 27} We agree with Rex that Kelm prohibits trial courts from passing their responsibility to determine the allocation of parental rights to an arbitrator. In light of this, the trial court's rationale for its determination of the allocation of parental rights must be scrutinized to insure Kelm has been complied with. It is not the arbitrator's findings or methods that we review, but the trial court's findings regarding the allocation of parental rights and the degree to which, if any, the trial court passed their responsibility for those findings to the arbitrator. At oral argument, Rex emphasized the use of the word "adopts" in the trial court's opinion. This language, however, appears at the very end of the trial court's long analysis of the parties' and their children's current relationships, needs, and desires. While the trial court used the word "adopts" in its opinion, the substance of the trial court's analysis reveals it did not merely adopt the arbitrator's decision. A detailed review of the trial court's independent analysis is contained in the response to Rex's first assignment of error.
 {¶ 28} Had the trial court merely adopted the arbitrator's decision without any independent analysis, we agree that Kelm would require reversal of that decision. Regardless of the form of the trial court's opinion and its choice of words, the substance of the opinion reveals it completed an independent analysis of the allocation of parental rights. Therefore, the trial court's decision is factually distinguished from Kelm.
 {¶ 29} Rex also argues that the trial court erred in permitting the testimony of the arbitrator at trial. Rex cites Ohio Superintendence Rule 15 for the proposition that a trial court abuses its discretion any time it permits an arbitrator to testify in any form in a child custody matter.
 {¶ 30} Ohio Superintendence Rule 15(B)(2) reads as follows:
 {¶ 31} "The parties shall propose an arbitrator to the court and identify all issues to be resolved by the arbitrator. The arbitrator shall consent to serve and shall have no interest in the determination of the case or relationship with the parties or their counsel that would interfere with the impartial consideration of the case."
 {¶ 32} In her brief, Rex emphasizes the rule's use of the phrase "no interest" as prohibiting an arbitrator from testifying. Rex offers no authority for the proposition that this rule of superintendence bars arbitrators from testifying.
 {¶ 33} Rex asks us to declare, as a matter of law, that an arbitrator's mere testimony in a domestic relations trial demonstrates an interest in the outcome in favor of one or another party. We decline to do so. Further, a review of the arbitrator's testimony in this case reveals no bias in favor of either party. The arbitrator's direct examination, cross-examination, and examination by the guardian ad litem reviewed the substance of her arbitration decision and the circumstances at the time her decision was formed. The arbitrator was not asked, and did not offer, her opinion as to which party should prevail at trial. Her entire testimony dealt with her 1996 decision and the facts underlying it.
 {¶ 34} We find that the trial court did not abuse its discretion and improperly pass its responsibility regarding determining the proper allocation of parental rights to the arbitrator. Rex's second assignment of error is overruled.
 {¶ 35} Conner's first assignment of error is as follows:
 {¶ 36} "I. The Trial Court Erred When it Extended the Weekend Visitation from Sunday at 7:30 pm to Monday After School."
 {¶ 37} While denying Rex's motion, the trial court expanded Rex's weekend visitation time. Conner argues this decision by the trial court was an abuse of discretion as it was contrary to the children's best interests. We disagree.
 {¶ 38} The trial court found that the parties' two younger children "need to spend more time with [Rex] * * * [and] the relationship * * * with their mother needs to be mended." To facilitate that mending of the relationship, the trial court expanded Rex's weekend visitation time with the parties' two younger children. We cannot say that the trial court abused its discretion in expanding Rex's weekend visitation time to attempt to mend the relationship between her and her two younger children. Conner's first assignment of error is overruled.
 {¶ 39} Rex's third assignment of error is as follows:
 {¶ 40} "III. The Trial Court Erred in Denying the Plaintiff-Appellant's Motion to Modify Child Support and Granting the Defendant-Appellee's Motion to Modify Child Support."
 {¶ 41} Rex argues the trial court failed to consider her increased visitation time, failed to impute income to Conner due to his voluntary underemployment, and arbitrarily determined the gross income of Rex.
 {¶ 42} Rex did not object to the magistrate's recommendation with regard to its claimed failure to consider Rex's increased visitation time when re-calculating Rex's child support. As a result, Rex waived this claimed error for purpose of appeal. In Re: Guardianship of MichaelKoenig v. Beth Reid, Cuyahoga App. No. 81462, 2003-Ohio-1727.
 {¶ 43} "In calculating child support, the trial court must consider the combined gross income of both parents. If the court determines that a parent is voluntarily unemployed or underemployed, it may impute to that parent income which it determines the parent would have earned if fully employed. The question whether a parent is voluntarily unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion, that factual determination will not be disturbed on appeal. A parent's subjective motivations for being voluntarily unemployed or underemployed play no part in the determination whether potential income is to be imputed to that parent in calculating his or her support obligation." Cimperman v.Cimperman, Cuyahoga App. No. 80807, 2003-Ohio-869.
 {¶ 44} As to the claimed underemployment of Conner, the trial court found that Conner "last worked full time during the marriage [earning] between $40,000 — $50,000 per year." The trial court then imputed income of $43,680 to Conner and added $21,538 to that amount to reflect "income he derives from interest, dividends and capital gains." We cannot say the trial court failed to consider Conner's underemployment and abused its discretion in determining Conner's total income, both imputed and from investment sources.
 {¶ 45} The trial court based its calculation of Rex's income on account summaries from Rex's Merrill Lynch account and other factors. The trial court found that "the 1998 cash flow was so much greater than the actual taxed income for 1998 * * * that basing [Rex's] child support obligation on the tax flow analysis alone would not be appropriate." Based upon this, we cannot say the trial court's basis for determining Rex's income was arbitrary or an abuse of discretion. Rex's third assignment of error is overruled.
 {¶ 46} Conner's second assignment of error is as follows:
 {¶ 47} "II. The Trial Court Erred in Finding Ms. Rex's Annual Income to be only $214,767 and in Imputing Full-Time Employment Income to Mr. Conner for Purposes of Calculating Child Support."
 {¶ 48} The trial court determined Rex's income as follows:
 {¶ 49} "* * * [A]t the time of the divorce, pursuant to the figures used to calculate child support[,] Plaintiff's income was $110,000. Pursuant to her 1998 income tax return * * * her income was $188,657.00 of which $42,224.00 was income from interest and dividends. * * * [H]er cash flow determined from Merrill Lynch account summaries for 1998 was $400,140.73 and for 1999 was $240,878.28. Since the 1998 cash flow was so much greater than the actual taxed income for 1998 * * * basing Plaintiff's child support obligation on the tax flow analysis alone would not be appropriate. The [trial court] therefore finds that Plaintiff's income for the purposes of determining child support should be based upon the average of her 1998 adjusted gross income of $188,657 and her 1999 cash flow of $240,878.28. Therefore for purposes of child support Plaintiff's income is $214,767.64 [(188,657 + 240, 878.28) divided by 2] (sic)."
 {¶ 50} Conner argues that the trial court "should have found Ms. Rex's income to be the average of the cash flow analysis for 1998 and the first eight months of 1999. $439,144 plus $240,876 [equaling] $680,020 * * *." That figure, divided by two, would place Rex's income at $340,010.
 {¶ 51} Based upon the trial court's analysis, we cannot say the trial court's basis for determining Rex's income was arbitrary or an abuse of discretion. Conner's second assignment of error is overruled.
 {¶ 52} Rex's fourth assignment of error is as follows:
 {¶ 53} "IV. The Trial Court Erred in Denying the Plaintiff-Appellant's Motion to Show Cause."
 {¶ 54} Rex moved to have Conner show cause why he should not be held in contempt for his failure to pay court ordered child support in accordance with the parties' divorce decree. As to child support, the divorce decree states:
 {¶ 55} "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that * * * [Rex], shall pay to * * * [Conner], the sum of $1,600.00, plus 2% poundage ($1,632.00 including poundage) every month for the support of the minor children."
 {¶ 56} The order does not reflect a requirement that Conner pay child support to Rex even though the trial court awarded primary custody of one of the parties' three children to Rex.
 {¶ 57} Rex points to the underlying child support worksheet (attached to the divorce decree as Exhibit A) as evidence that the court ordered child support was really $533.33 per month per child. Line 28 of Exhibit A does in fact reflect that figure. However, Line 29 reflects the exact amount of the court order as applied to Rex. Both Rex and Conner and their corresponding counsel signed this page agreeing to the amounts and attesting that the "[c]alculations have been reviewed."
 {¶ 58} In spite of these facts, Rex argues Conner should have been paying $533.33 to Rex for the support of their oldest child who was residing with Rex. In responding to Rex's motion to show cause against Conner, the trial court found that "[t]here is no similar order on [Conner] that he pays (sic) child support to [Rex] in the divorce decree. Therefore * * * [Conner] has not failed to comply with a provision of the divorce decree by not paying child support to [Rex]."
 {¶ 59} There appears to be an error when comparing the child support worksheet, the language of the divorce decree, and the possession arrangement. The trial court acknowledged this apparent inconsistency and found that "the Court [ordered] in December 1999 that the child support continue to be paid and that a portion be held pending further determination by the court."
 {¶ 60} We cannot say the trial court abused its discretion in denying Rex's motion to show cause because the plain language of the decree does not obligate Conner to pay child support. Rex's fourth assignment of error is overruled.
 {¶ 61} We do, however, recognize the plain error resulting from the inconsistency between the possession schedule and child support order from the original divorce decree. The original decree, which all parties and their counsel approved, nonetheless required child support to be paid by Rex to Conner for three children. Contrary to that child support order, Rex had possession of one of the children and therefore, at most, should have been paying child support for only the two children in Conner's possession.
 {¶ 62} We recognize that the record reflects a later order began to withhold one-third of Rex's payment at the Child Support Enforcement Agency pending a further court order. However, the record is silent as to the resolution of Rex's overpayment and Conner's underpayment during this period. It is also silent as to the child support order that is needed to replace the order in the divorce decree that had a "period of three years" as discussed in Rex's fifth assignment of error. Therefore, we remand to the trial court solely for a determination of arrearage, if any, owed by either party flowing from the three-year period of the original child support order which is addressed in the discussion of Rex's fifth assignment of error.
 {¶ 63} Rex's fifth assignment of error is as follows:
 {¶ 64} "V. The Trial Court Erred by Granting the Defendant-Appellee's Motion to Show Cause Finding the Plaintiff-Appellant in Contempt of Court and Abused its Discretion by Failing to Permit the Plaintiff-Appellant an Opportunity to Purge Her Contempt."
 {¶ 65} In 1999, even though a portion of Rex's overall payment was then being withheld pending the resolution of the child support payment inconsistency discussed in assignment of error IV above, the trial court found that "[Rex] removed her assets from the account on which the withholding notice was placed. [Rex] placed assets into another account never notifying the C.S.E.A. of the need to transfer the withholding notice and ultimately removed her assets from [that account] * * *."
 {¶ 66} These actions by Rex, obviously, caused a complete stoppage of court ordered child support payments from Rex to Conner. In fact, the trial court found that "[Rex] admitted since June 1999 she [has] never paid * * * her child support obligation."
 {¶ 67} In response to that, Conner filed a motion to show cause for Rex's failure to pay. The trial court granted Conner's motion. Rex argues that the trial court abused its discretion in finding her in contempt because the language of the divorce decree plainly terminated her child support obligation after three years.
 {¶ 68} The language of the divorce decree reads in pertinent part:
 {¶ 69} "Wife agrees to indemnify Husband in the amount equal to her obligation to contribute to the support of the minor children for a period of three (3) years from the date of this order. Husband agrees to indemnify Wife in the amount equal to his obligation to contribute to the support of the minor children less $1,600.00 per month toward Wife's contribution to the support of the minor children for a period of three (3) years from the date of this order."
 {¶ 70} Rex reads the two references to "three (3) years" as acting to terminate the support obligation after three years.
 {¶ 71} The trial court found that "nowhere in this language is the word terminate * * * [and there is] nothing in the child support order of the divorce decree that states that after three years the child support obligation automatically terminates." Reviewing the language of the divorce decree, we cannot say that the trial court abused its discretion in finding Rex in contempt for failure to pay child support since 1999.
 {¶ 72} Rex also argues the court abused its discretion in failing to provide Rex an opportunity to purge her contempt.
 {¶ 73} Rex failed to object to this portion of the magistrate's recommendation and therefore waives any objection to it on appeal. InRe: Guardianship of Michael Koenig, supra. Rex's fifth assignment of error is overruled.
 {¶ 74} Conner's third assignment of error is as follows:
 {¶ 75} "III. The Trial Court Abused its Discretion by only Ordering Ms. Rex to Pay $1,000 of Mr. Conner's $25,485 in Attorney Fees."
 {¶ 76} The awarding of attorney fees is within the sound discretion of the trial court. Tovar v. Tovar (Nov. 10, 1993), Cuyahoga App. No. 63933. Therefore, an award of attorney fees will only be disturbed upon a finding of an abuse of discretion. Id.
 {¶ 77} The trial court considered Conner's attorney fees as reasonable, but found that "both parties have adequate means for which to have proceeded with this action, therefore, [Conner] is not entitled to attorney fees based upon his need to defend certain motions filed by [Rex]." The trial court did, however, award Conner $1,000 in fees after finding Rex in contempt for failing to comply with the court's order regarding the payment of child support. We cannot say the trial court abused its discretion in its award of attorney fees in this matter. Conner's third assignment of error is overruled.
 {¶ 78} Finally, in case number 81810, Rex's sole assignment of error is as follows:
 {¶ 79} "I. The Trial Court Erred By Denying Halle Rex's Motion for New Trial."
 {¶ 80} Following the trial court's adoption of the magistrate's recommendation in this matter, Rex filed a motion for new trial. That motion contained the identical claimed errors that were addressed in Rex's five assignments of error from case number 81210.
 {¶ 81} The standard of review for a ruling on a motion for new trial is whether the trial court abused its discretion. Verbon v.Pennese (1982), 7 Ohio App.3d 182.
 {¶ 82} For the reasons stated above in response to Rex's five assignments of error from case number 81210, Rex's sole assignment of error in case number 81810 is overruled.
 {¶ 83} The judgments for both cases 81810 and 81210 are affirmed. Case remanded for further proceedings consistent with this opinion.
PATRICIA ANN BLACKMON, P.J., and ANTHONY O. CALABRESE, JR., J., concur.