[Cite as *Benchic v. Skaggs*, 2022-Ohio-913.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

CHRISTOPHER R. BENCHIC, :

    Plaintiff-Appellant, : Case No. 21CA3942

    v. :

SARAH M. SKAGGS, :
                       DECISION AND JUDGMENT ENTRY

    Defendant-Appellee. :

_____

APPEARANCES:

David B. Beck, Portsmouth, Ohio, for appellant.[1]
_____
CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED:3-16-22
ABELE, J.

{¶1} This is an appeal from a Scioto County Common Pleas Court judgment that denied a motion to modify a prior allocation of parental rights and responsibilities. Appellant assigns the following errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY APPLYING THE DOCTRINE OF RES JUDICATA AND RESTRICTING APPELLANT'S OPPORTUNITY TO INTRODUCE PROBATIVE EVIDENCE."

_____

[1] Appellee did not enter an appearance in this appeal.

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY APPLYING O.R.C. 3109.04(E)(1)(a) TO RESTRICT APPELLANT FROM PRESENTING EVIDENCE PRIOR TO MARCH 21, 2019."

{¶2} The unmarried parties are the biological parents of twin boys born in 2013. Approximately six months after the children's birth, the parties terminated their relationship. Appellant subsequently filed a complaint to establish a father-child relationship with the twins and request that the court either (1) designate him the children's residential parent and legal custodian, or (2) establish a shared parenting plan.

{¶3} Later, the parties agreed to designate appellee the residential parent and legal custodian and award appellant parenting time. On February 23, 2015, the trial court entered a judgment entry that reflected the parties' agreement.

{¶4} On January 15, 2016, appellant filed a motion to modify his parenting time. The parties later entered into an agreement regarding appellant's motion and, on June 21, 2016, the court modified appellant's parenting time in accordance with the parties' agreement.

{¶5} On November 20, 2018, appellee filed an emergency motion that asked the trial court to suspend the children's parenting time with appellant. Appellee alleged that the

children's uncle sexually abused the children while in appellant's care.

{¶6} The trial court granted appellee's motion and stated "that temporary custody" of the children "shall vest with" appellee until further order of the court. The court also suspended appellant's parenting time.

{¶7} On January 9, 2019, the trial court found that, concerning appellee's November 20, 2018 motion, the parties agreed to resume operating under the court's June 21, 2016 parenting time order. On March 21, 2019, the trial court entered an order that modified its January 9, 2019 order to add a provision that the children not have any unsupervised contact with their uncle, Matthew Benchic.

{¶8} A few weeks later, appellant filed a motion to modify the prior allocation of parental rights and responsibilities and asserted that a change in circumstances had occurred since the court's prior decree that designated appellee the children's residential parent and legal custodian. Appellant thus requested the court to designate him the children's residential parent and legal custodian.

{¶9} On December 15, 2020, appellant filed an ex parte motion for emergency custody and alleged that appellee "has been involved in a toxic relationship with her girlfriend" and that

the girlfriend recently contacted appellant.  The girlfriend alleged that (1) the children had been "exposed to fighting, violence, drugs and mental illness," (2) appellee is "an unfit, mentally ill, drug abuser," and (3) appellee beat one of the children with a wooden spoon and slapped the child in the face. Appellant further claimed that his current wife, Megan, noted during the last visitation exchange that appellee's eyes were "completely glassed over" and appellee "was unsteady on her feet."  Megan additionally noticed that appellee "stumble[d]" when appellee approached the children to give them a hug, and appellee "was unable to communicate with [Megan] because her speech was so unclear."  The guardian ad litem joined in appellant's motion for ex parte emergency custody.  The trial court subsequently granted appellant's motion and awarded him temporary emergency custody of the children.

{¶10} On January 6, 2021, the court held a hearing regarding appellant's motion for ex parte emergency custody.  At the hearing, Caitlynn Roberts testified that she and appellee had been in a relationship for approximately one year that ended in October 2020.  Roberts explained that in December 2020, after the relationship ended, Roberts sent messages to appellant and Megan that claimed, inter alia, that (1) appellee gave Roberts a black eye, (2) appellee smoked marijuana in front of the

children, (3) appellee is "lazy" and sleeps "all day," (4) appellee exposed the children to fighting, screaming, and violence, (5) appellee "is unfit and mentally ill," and (6) appellee takes twenty-plus pills each day. Roberts admitted, however, that she fabricated all of the allegations. Roberts stated that she was upset at the time and "just kinda wanted to start drama."

**{¶11}** After the hearing, the trial court held another hearing to consider appellant's motion to modify the prior allocation of parental rights and responsibilities. The guardian ad litem, Christine Scott, testified and recommended that the court designate appellant the children's residential parent. Scott related that one of the twins, Greyson, is educationally delayed by about two and one-half years. Scott suggested that appellee did not intervene in Greyson's education sooner and did not act quickly enough to ensure that Greyson had an IEP in place. Scott also indicated that appellee believed that Matthew abused the boys and that appellee initially sought counseling. Scott noted that, even though appellee continued to believe that Matthew had abused the children, appellee did not continue counseling for the children.

**{¶12}** Appellant's counsel attempted to question Scott regarding the abuse allegations, but appellee's counsel objected

and stated that he "believe[s] this is all res judicata." The court agreed and stated, "Yeah[,] so why are you going there?" Appellant's counsel stated that he believed that the court needs to "know that [appellee] believes this still occurred" and that if she believes that it occurred, then "why wasn't it being addressed." Counsel advised the court that he would try to approach the issue in a different manner, and the court said it would "hold onto" appellee's objection.

{¶13} Scott continued her testimony and stated that, if appellee "truly felt as if her kids had been abused, she was not addressing that issue." Scott explained that appellee told Scott that the children "were still suffering effects from it, but she had them in no type of mental health counseling." Scott also testified that if any individual continued to require their children to deal with an unfounded and untrue allegation of sexual abuse, it would not be healthy or beneficial for the children.

{¶14} During appellant's testimony, appellant's counsel attempted to ask appellant whether he thought that it is in the children's best interests for appellee to continue to believe that Matthew molested the children. The trial court, however, did not allow counsel to continue with the questioning and sustained appellee's objection.

{¶15} After the hearing, appellant filed a post-hearing brief regarding the change in circumstances and alleged that Greyson's educational deficiencies and appellee's "complete fabrication of sexual molestation allegations" against Matthew constitute changed circumstances. Appellant asserted that the accusations "have had a significant impact on the children, the relationship between [the parties], the lack of trust between the parties, and [appellee]'s act of continuing counseling at Hope's Place. [sic]"

{¶16} On February 18, 2021, the trial court overruled appellant's motion to modify. The court (1) found that the date of the last decree was March 21, 2019, when the court entered an order regarding appellee's November 2018 emergency motion that asked the court to suspend appellant's visitation and (2) did not agree with appellant that a change in circumstances had occurred since the date of the court's last decree. The court recognized appellant's argument that appellee's continued belief that Matthew sexually molested the children and her decision to enroll the children in counseling constitutes a change in circumstances, but determined that neither of these circumstances was a change of substance so as to warrant modifying the residential parent. Moreover, the court found

that appellant "seems to harbor an intense grudge or anger towards" appellee with respect to the allegations against Matthew and that appellant appeared to be using his motion to modify the prior allocation of parental rights and responsibilities "to prove his brother not guilty of allegations that were made prior to the last Judgment Entry entered in this case on March 21, 2019." The court noted that appellant did not litigate the issue and, instead, entered into an agreement with appellee. Ultimately, the court concluded that even if appellee's continued belief in the allegations is unjustifiable, her continued belief does not constitute "an event, occurrence, or situation that has had a material and adverse effect upon the children."

{¶17} The court thus denied appellant's motion to modify the prior allocation of parental rights and responsibilities. This appeal followed.

A

{¶18} Initially, we note that appellee did not file an appellate brief or otherwise appear in this appeal. When an appellee fails to file an appellate brief, App.R. 18(C) authorizes us to accept an appellant's statement of facts and issues as correct, then reverse a trial court's judgment as long as the appellant's brief "reasonably appears to sustain such

action." In other words, an appellate court may reverse a judgment based solely on consideration of an appellant's brief. *E.g., State ex rel. Davidson v. Beathard*, ___ Ohio St.3d ___, 2021-Ohio-3125, ___ N.E.3d ___, ¶ 10; *Harper v. Neal*, 4th Dist. Hocking No. 15CA25, 2016-Ohio-7179, ¶ 14.

**{¶19}** In the case sub judice, after our review and as we explain below, we believe that appellant's brief reasonably appears to sustain a reversal of the trial court's judgment.

B

**{¶20}** For ease of discussion, we combine our review of appellant's two assignments of error. In his assignments of error, appellant argues, in essence, that the trial court improperly prohibited him from introducing evidence to establish that appellee knowingly fabricated the sexual abuse allegations or recklessly believed them to be true, and that her conduct had an adverse effect on the children.

**{¶21}** In his first assignment of error, appellant contends that the trial court incorrectly applied the doctrine of res judicata to prevent him from introducing evidence regarding the allegations. In his second assignment of error, appellant asserts that the trial court incorrectly construed R.C. 3109.04(E)(1)(a) so as to prohibit him from presenting evidence that predated the court's March 21, 2019 order concerning

appellee's emergency motion that asked the court to suspend appellant's parenting time with the children. Appellant alleges that the March 21, 2019 order is not a prior order allocating parental rights and responsibilities. He thus contends that R.C. 3109.04(E)(1)(a) does not limit his ability to present evidence regarding a change in circumstances to the time period between the court's March 21, 2019 order and the filing of his motion.

C

{¶22} Appellate courts generally review trial court decisions regarding the modification of a prior allocation of parental rights and responsibilities with the utmost deference. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997); *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Consequently, absent an abuse of discretion, we will generally not disturb a trial court's decision to modify parental rights and responsibilities. *Davis*, 77 Ohio St.3d at 418. "'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). "It is to be expected that most instances of abuse of discretion

will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary."  *Id.*  "A decision is unreasonable if there is no sound reasoning process that would support that decision.  It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result."  *Id.*

{¶23} In *Davis*, the court more specifically defined the standard of review that applies in custody proceedings as follows:

> "'Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. (*Trickey v. Trickey* [1952], 158 Ohio St. 9, 47 O.O. 481, 106 N.E.2d 772, approved and followed.)' [*Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus].
> The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page.  As we stated in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80–81, 10 OBR 408, 410–412, 461 N.E.2d 1273, 1276–1277:
> 'The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.
> * * *
>     * * * *

>     * * * A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court.  A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.  The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal.'"

*Id.* at 418–419.

**{¶24}** Additionally, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well."  *Id.* at 419. Furthermore, we recognize that "custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence." *Id.* at 418.  As the Ohio Supreme Court long-ago explained:

>     In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important.  The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record.

*Trickey*, 158 Ohio St. at 13.

**{¶25}** Thus, this standard of review does not permit us to reverse the trial court's decision if we simply disagree with

the decision.  We may, however, reverse a trial court's custody decision if the court made an error of law, if its decision is unreasonable, arbitrary, or unconscionable, or if substantial competent and credible evidence fails to support it.  *Davis*, 77 Ohio St.3d at 418–419, 421 (explaining "abuse of discretion standard" and stating that courts will not reverse custody decisions as against the manifest weight of the evidence if substantial competent and credible evidence supports it, courts must defer to fact-finder, courts may reverse upon error of law, and trial court has broad discretion in custody matters).

**{¶26}** In the case at bar, appellant's first assignment of error asserts that the trial court erred as a matter of law by inappropriately applying the doctrine of res judicata.  In his second assignment of error, appellant argues that the trial court erred as a matter of law by misconstruing R.C. 3109.04(E)(1)(a).  We first consider appellant's argument that the trial court misconstrued R.C. 3109.04(E)(1)(a).

D

**{¶27}** R.C. 3109.04(E)(1)(a) sets forth the applicable standard when a court considers a motion to modify a prior decree allocating parental rights and responsibilities.  The statute prevents a trial court from modifying a prior decree

> unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child.

Moreover, the statute requires trial courts to

> retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
>     (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
>     (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
>     (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶28} The statute thus creates a strong presumption in favor of retaining the residential parent and precludes a trial court from modifying a prior parental rights and responsibilities decree unless the court finds all of the following: (1) a change occurred in the circumstances of the child, the child's residential parent, or a parent subject to a shared-parenting decree, (2) the change in circumstances is based upon facts that arose since the court entered the prior decree or that were unknown to the court at the time of the prior decree; (3) the

child's best interest necessitates modifying the prior custody decree; and (4) one of the circumstances specified in R.C. 3109.04(E)(1)(a)(i)-(iii) applies. *In re Brayden James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, ¶ 14; *accord Sites v. Sites*, 4th Dist. Lawrence No. 09CA19, 2010-Ohio-2748, 2010 WL 2391647, ¶ 17. Thus, the threshold question in a parental rights and responsibilities modification case is whether a change in circumstances has occurred since the prior decree allocating parental rights and responsibilities.

{¶29} A decree allocating parental rights and responsibilities is one that determines which "party or parties * * * have the right to the ultimate legal and physical control of a child." *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 22. In *Fisher*, the court explained that when the legislature amended R.C. 3109.04, it "changed the terms 'custody and control' to 'parental rights and responsibilities.'" *Id.* The court stated that "'"[c]ustody" resides in the party or parties who have the right to ultimate legal and physical control of a child.'" *Id.*, quoting *Braatz v. Braatz*, 85 Ohio St.3d 40, 44, 706 N.E.2d 1218 (1999), quoting *In re Gibson*, 61 Ohio St.3d 168, 171, 573 N.E.2d 1074 (1991). The court thus concluded that "parental rights and responsibilities" essentially means "custody and control." *Fisher v. Hasenjager*,

116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 22.

**{¶30}** In the case sub judice, we agree with appellant that the trial court should not have determined that appellant could not present evidence that predated the court's March 2019 entry in order to establish that a change in circumstances had occurred.  In our view, the court's March 2019 entry is not a "prior decree allocating parental rights and responsibilities for the care of children" within the meaning of R.C. 3109.04(E)(1)(a).  The March 2019 entry did not allocate custody.  Rather, the March 2019 entry added a provision to the court's January 2019 order to restore appellant's parenting time with the children.  The R.C. 3109.04(E)(1)(a) change in circumstances requirement does not apply to motions to modify parenting time.  *Hartman v. Hartman*, 8th Dist. Cuyahoga No. 107251, 2019-Ohio-1637, ¶ 16; *Banfield v. Banfield*, 12th Dist. Clermont No. CA2010-09-066, 2011-Ohio-3638, ¶ 39.  Instead, R.C. 3109.051 governs motions to modify parenting time and does not require the court to find a change in circumstances before the court may modify a party's parenting time.  *Hartman*; *Banfield*.

**{¶31}** In the present case, the trial court's February 23, 2015 order designated appellee the children's residential parent and legal custodian.  Appellee's status as the residential parent remained unchanged through the date appellant filed his

motion to modify the prior allocation of parental rights and responsibilities. Thus, the date of the prior decree allocating parental rights and responsibilities, i.e., custody, is February 23, 2015. The trial court, therefore, should permit appellant to present evidence that predates the court's March 2019 entry.

{¶32} Accordingly, based upon the foregoing reasons, we sustain appellant's second assignment of error.

E

{¶33} Appellant also contends that the trial court incorrectly determined that the doctrine of res judicata prevented appellant from introducing evidence regarding the sexual abuse allegations.

{¶34} In Ohio, "[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 6; *accord Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 232–34, 118 S.Ct. 657, 663–64, 139 L.Ed.2d 580 (1998), fn.5 (citations omitted) (explaining that the term, "res judicata," traditionally describes both "claim preclusion (a valid final adjudication of a claim precludes a second action on that claim or any part of it); and (2) issue preclusion, long called

'collateral estoppel' (an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim").

> With regard to claim preclusion, a final judgment or decree rendered on the merits by a court of competent jurisdiction is a complete bar to any subsequent action on the same claim between the same parties or those in privity with them. [*Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995)], citing *Norwood v. McDonald*, 142 Ohio St. 299, 52 N.E.2d 67 (1943), paragraph one of the syllabus, and *Whitehead [v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 254 N.E.2d 10 (1969)], paragraph one of the syllabus. Moreover, an existing final judgment or decree between the parties is conclusive as to all claims that were or might have been litigated in a first lawsuit. *Id.* at 382, 653 N.E.2d 226, citing *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62, 558 N.E.2d 1178 (1990). "'The doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it.'" *Id.* at 382, 653 N.E.2d 226, quoting *Natl. Amusements* at 62, 558 N.E.2d 1178.

*Brooks v. Kelly*, 144 Ohio St.3d 322, 2015-Ohio-2805, 43 N.E.3d 385, ¶ 7.

**{¶35}** Issue preclusion, or collateral estoppel, "'precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action.'" *Warrensville Hts. City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 152 Ohio St.3d 277, 2017-Ohio-8845, 95 N.E.3d 359, ¶ 9, quoting *Whitehead v. Gen. Tel. Co.*, 20

Ohio St.2d 108, 112, 254 N.E.2d 10 (1969); *accord Lowe's Home Centers, Inc. v. Washington Cty. Bd. of Revision*, 154 Ohio St.3d 463, 2018-Ohio-1974, 116 N.E.3d 79, ¶ 33; *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (1998).

> While the merger and bar aspects of res judicata have the effect of precluding the relitigation of the same cause of action, the collateral estoppel aspect precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action that was based on a different cause of action. "In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit."

*Fort Frye*, 81 Ohio St.3d at 395 (citation omitted), quoting *Whitehead*, 20 Ohio St.2d at 112.

**{¶36}** We further note, however, that the doctrine of res judicata does not limit trial courts from modifying the allocation of parental rights and responsibilities and parenting time. *Kelm v. Kelm*, 92 Ohio St.3d 223, 227, 749 N.E.2d 299 (2001). Indeed, "as a practical matter, a custody and visitation order is never absolutely final." *Id.* Thus, applying the doctrine of res judicata to orders relating to parental rights and responsibilities and to parenting time is "impractical." *Id.* Instead, "[t]he trial court has a continuing responsibility under R.C. 3109.04(B)(1) and (E)(1)(a)

to protect the best interests of the children." *Id.*

Accordingly, "in the area of custody and visitation, we

sacrifice finality and some of our limited judicial resources in

order to secure a higher value—the best interests of children."

*Id.*

**{¶37}** In the case sub judice, we do not believe that the

doctrine of res judicata prevents appellant from introducing

evidence regarding the sexual abuse allegations. First, as the

Ohio Supreme Court stated in *Kelm*, a trial court has a duty to

protect the children's best interests. Thus, a trial court

generally should not apply the doctrine of res judicata to limit

evidence that impacts a child's best interests.

**{¶38}** Additionally, R.C. 3109.04(E)(1)(a) defines the time

period that a trial court may consider when reviewing a motion

to modify a prior allocation of parental rights and

responsibilities. Under the statute, a court may consider

events that have occurred since the date of the court's last

decree allocating parental rights and responsibilities. As we

previously stated, in the case at bar that date is February 23,

2015.

**{¶39}** We also find some merit to appellant's assertion that

the doctrine of collateral estoppel does not prevent him from

introducing evidence regarding the sexual abuse allegations.

Here, the parties did not actually litigate the issue. The parties did not present evidence regarding sexual abuse allegations, and the court did not hold a hearing to consider the allegations. Instead, the parties quickly agreed to resolve appellee's motion to suspend appellant's parenting time with the children. The court's order that incorporated the parties' agreement does not indicate that the parties agreed upon the merits of the sexual abuse allegations raised in appellee's motion. We thus conclude that appellant is not collaterally estopped from presenting evidence regarding the allegations.

**{¶40}** Accordingly, based upon the foregoing reasons, we sustain appellant's first assignment of error.

F

**{¶41}** In conclusion, we (1) sustain appellant's first and second assignments of error; (2) reverse the trial court's judgment that denied appellant's motion to modify the prior allocation of parental rights and responsibilities and remand for further proceedings consistent with this opinion.[2] We also leave undisturbed at this juncture the portion of the court's

---

[2] We hasten to add that our decision should not be construed as a comment on the merits of appellant's motion to modify. Instead, our decision means simply that the trial court must afford appellant a hearing at which he may present evidence regarding the allegations and any other relevant evidence to show that a change in circumstances has occurred since the

SCIOTO, 21CA3942

decision that restored appellee's status as the children's residential parent and legal custodian and that granted appellant parenting time as provided in the court's previous order. During the pendency of the motion to modify, the trial court may, in the exercise of its discretion, allocate parental rights and responsibilities in the manner it deems to be in the children's best interest.

> JUDGMENT REVERSED AND CAUSE
> REMANDED FOR FURTHER
> PROCEEDINGS CONSISTENT WITH
> THIS OPINION.

---

court's February 23, 2015 decree.

SCIOTO, 21CA3942

JUDGMENT ENTRY

It is ordered that the judgment be reversed and this cause remanded for further proceedings consistent with this opinion. Appellant shall recover of appellee the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
    Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.